# CITY OF KENNETT, Appellant, v. KATZ CON-STRUCTION COMPANY and AMERICAN SUR-ETY COMPANY.

### Division Two, February 16, 1918.

1. **APPEAL: From Interlocutory Order: Extent of Review.** When an order for a new trial is granted for a specific reason, appellant's burden is limited thereto in showing error in the trial court's action. If other grounds are relied on to sustain the order, the respondent must preserve and call the appellate court's attention to them or they will not be considered.

2. **ORDER GRANTING NEW TRIAL: Remittitur: Excessive Verdict.** The authority of the trial court to enter a *remittitur* on account of an excessive verdict, is limited to cases in which the jury finds for more than the amount authorized in the instructions or plead-ings. Hence an order granting a new trial unless the plaintiff en-ters a *remittitur* in a named sum, although on its face seemingly based on an excessive verdict, will not be so considered in the appellate court, if it is apparent from an analysis of the order and an examination of the record, that the real reason for granting the new trial was the giving of an instruction for plaintiff on the measure of damages and the refusal of an instruction asked by defendant on the same subject.

3. ———: **Revew on Appeal: Other Record Matters.** In reviewing an order granting a new trial, the appellate court is not limited in determining the trial court's reason for granting the new trial to the mere letter of the order, but may call to its aid other affirmative record facts necessarily explanatory of the court's action.

4. ———: **Review of Court's Discretion.** There can be no discre-tion as to the law of a case. The giving of an instruction as to the measure of damages is a ruling on a matter of law, and if such was the reason of the court's action for granting a new trial the question of whether the instruction announced a correct rule may be reviewed on an appeal from the order. Such review does not involve the trial court's discretion, for it is only in the ap-plication of correct rules of law to the facts of a case that the exercise of discretion is permissible.

5. **BREACH OF CONTRACT: Measure of Damages: Liability of Surety.** Where the contract was that the contractor was to fur-nish the materials, do the excavating and install a complete sewer-age system, and the city paid him for the work as it progressed and

after he had been paid nearly ninety per cent of the contract price he abandoned the work, the city is entitled to be made whole and to recover whatever amount in excess of the contract price is necessary to complete the work; and in a suit on his bond the surety's liability is the same.

6. ———: ———: **Duty to Complete the Work.** And in such case proof of performance by the city of the uncompleted work does not constitute a condition precedent to its right to recover the amount necessary to complete the work.

7. ———: ———: **Speculative Damages.** Damages sustained by the city are not speculative when the materials furnished and the work performed are known, and the outlay necessary to complete the sewerage system according to the contract is ascertainable with reasonable certainty from the testimony of experts familiar with the cost of materials and labor.

8. ———: ———: ———: **Uncertainty as to Amount: Best Evidence.** In applying the rule as to uncertain damages, it is the uncertainty as to their nature, and not as to their measure or extent, that is meant. The actual amount of damages arising from a breach of contract may not be susceptible of exact proof, but the law does not permit one whose act has resulted in the loss to escape liability on that account. The manner of measuring the damages having been ascertained, the law only requires that the best evidence of the amount of which the nature of the case is susceptible be adduced.

9. ———: **City's Reserved Right to Complete Work: Limitation on Power to Sue Surety.** A clause in the contract to the effect that if the contractor shall abandon the work the city "shall have the right to annul and cancel this contract and to complete the same at the expense of contractor" means no more than that the city is given the permissive power to complete the work if it chooses, and in no wise precludes it from suing on the contractor's bond for damages without completing the work.

10. ———: **Damages: Expert Testimony.** The testimony of experts, familiar with the cost of materials and of the amount of labor necessary to install the sewers and to complete the work, abandoned by the contractor before its completion and after the contract price had been almost entirely paid to him, is competent evidence to prove the amount of damages the city sustained.

11. **REMARKS OF COUNSEL: Refusal of Contractor to Testify.** Remarks of counsel in arguments to the jury in a civil case are not error unless their prejudicial effect was sufficient to influence the rendition of the verdict. In a suit on a bond, growing out of a construction contract, reference by counsel in his argument to the jury that the surety had not put the contractor, who was in the court-room, on the witness stand to question or in any wise vary-

the testimony of the experts examined by the plaintiff in proof of the damages sustained, was not prejudicial error.

12. **REFUSING INSTRUCTIONS.** Where the instructions given for plaintiff clearly define and aptly submit a material issue, it is not error to refuse similar instructions asked by defendant.

13. **ACTION ON BOND: Changes in Contract.** Provisions in the contract, and in the bond itself, that extensions of time, alterations in or additions to or omissions from the work as required by the plans and specifications, should not violate the bond or discharge the surety, although made without the surety's consent, are as much a part of the bond as any other obligation expressed in it, and preclude the surety from objecting to any changes except those so extensive as to constitute the substitution of a contract different from the original. And where the changes were advantageous to the contractor, in that they entailed no additional time and lessened the cost of construction, the rule that changes in the construction of the improvement agreed to, subsequent to the execution of the contract, releases the surety, has no application, even in the absence of an agreement by the surety for changes.

14. ———: ———: **Settled by Jury.** Where the instruction given fairly submits the facts regarding changes in the plan of construction and the conditions upon which the surety would be released from liability because of such changes, the jury's verdict is binding on the appellate court, and forecloses the question of release.

15. ———: **Failure to Pay: Finding of Jury Conclusive.** A verdict for plaintiff was a finding by the jury that plaintiff had not failed to pay for the work done in the manner prescribed by the contract, the question being submitted to them by proper instructions and there being substantial evidence to support the finding. Under such circumstances the finding is conclusive on appeal.

Appeal from Bollinger Circuit Court.—*Hon. Peter H. Huck,* Judge.

REVERSED AND REMANDED *(with directions).*

*Orville Zimmerman, Ely, Pankey & Ely, William Morgan* and *Jones & Jones* for appellant.

The court erred in granting a new trial for the reason assigned, to-wit: that the court had erred in the trial of said cause in refusing defendant's instruction number 14 on the measure of damages. (a) Because

plaintiff's instruction number 2, given by the court at the trial of said cause properly declared the measure of damages applicable to this cause. (b)   Because the defendant's instruction number 14 did not properly declare the measure of damages applicable to this cause and would have been error· if given.   Couch v. Railroad, 252 Mo. 37; Brokerage Co. v. Campbell, 164 Mo. App. 20; Foundry Co. v. Moulder's Union, 177 Mo. App. 90; Tirry v. Hogan, 181 Mo. App. 61; Norman v. Vandenberg, 157 Mo. App. 490; Shoemaker v. Crawford, 82 Mo. App. 490; Kerns & Lorton v. Telegraph Co., 174 Mo. App. 439; Railroad v. Wingerter, 124 Mo. App. 434; Manter v. Truesdale, 57 Mo. App. 446; Simmons v. Whitman, 113 Mo. App. 357; Danforth &. Armstrong v. Railroad, 93 Ala. 620, 99 Ala. 338; Town Co. v. Lincoln, 56 Kan. 150; Wolcott v. Mount, 36 N. J. L. 270; Wakeman v. Mfg. Co., 101 N. Y. 205; Bagley v. Smith, 10 N. Y. 496; Allison v. Chandler, 11 Mich. 555; Gilbert v. Kennedy, 22 Mich.. 129; Railway v. Hepner, 83 Tex. 140; Oil Co. v. Blair, 113 Pa. St. 88;· Cordage Co. v. Luthuy & Co., 98 Ky. 589.

*W. G. Dinning* and *Oliver & Oliver* for respondent.

(1)   The granting of a new trial is within the sound discretion of the trial court, and unless it is manifest that its judicial discretion has been abused, its ruling in that regard will not be disturbed by an appellate court.   Bank v. Wood, 124 Mo. 76; Noble v. Kansas City, 95 Mo. App. 167; Ferrell v. Transit Co., 103 Mo. App. 454; Ridge. v. Johnson, 129 Mo. App. 541; Morris v. Kansas City, 117 Mo. App. 298; Karnes v. Wind, 126 Mo. App. 712; Lockwood v. Ins. Co., 47 Mo. 50; Choquette v. Railroad, 152 Mo. 257; Devine v. St. Louis, 257 Mo. 470; Wells v. Andrews, 133 Mo. 667. (2)   When the order of the trial court does not specify the ground upon which a new trial is granted (as in the case at bar) it will be sustained if any of the grounds set out in the motion are sufficient. Hewitt v. Steele,. 118 Mo. 473; Metropolitan, etc., Co. v. Webster, 193 Mo. 351; Sharp v. Adam, 121 Mo. App. 565; Roman

v. Boston Co., 87 Mo. App. 186; Secrist v. Bank, 104 Mo. App. 113; Bank v. Wood, 124 Mo. 76-77; Devine v. St. Louis, 257 Mo. 470; State ex rel. v. Thomas, 245 Mo. 65. (3) There were many grounds upon which trial court was warranted in granting defendant a new trial. First, the jury's verdict was excessive. (a) Where by their contract, parties agree upon the measure of damages or upon the method for the ascertaining of the measure of damages, such provision is as binding as is any other part of the contract. Surety Co. v. Woods, 45 C. C. A., 282; Simmons v. Whitman, 113 Mo. App. 357. (b) The trial court has a large discretion in granting new trials upon the ground that the verdict is excessive. Morrell v. Lawrence, 203 Mo. 1. c. 381. Second, the statement by plaintiff's counsel during the trial without being under oath of material evidential facts prejudicial to the defendant. Holliday v. Jackson, 21 Mo. App. 660. Third, the possibility of some of the jurors having been influenced by the statements or conduct of one of the parties made or done while not on the witness stand (the treating by the city clerk of some of the jurors during the progress of the trial). Tatlow v. Grantham, 66 Mo. App. 509; Choquette v. Railroad, 152 Mo. 266. Fourth, the admission at the trial of irrelevant evidence prejudicial to defendant, namely the expert testimony as to the costs of completing the work as the measure of damages, when the parties had by their contract fixed another method of ascertaining said measure of damages. Surety Co. v. Woods, 45 C. C. A. 282; Simmons v. Whitman, 113 Mo. 357; Hunt v. Railroad, 36 Fed. 481. Fifth, the entering into a new and supplemental contract materially affecting and materially. changing the whole plan of construction without notice to or consent of the defendant surety company. Hawman v. McLean, 139 Mo. App. 429; United States v. Freel, 186 U. S. 309; Eldridge v. Fuhr, 59 Mo. App. 44; Killoren v. Meehan, 55 Mo. App. 427; Beers v. Wolf, 116 Mo. 179. Sixth, the admission of all testimony relative to breach of contract by Katz Construction Company

after the showing by defendant surety company that the city first breached the contract by reason of its failure to pay for the work as it contracted and agreed to do. Construction Co. v. Butler, 165 Cal. 497; McCullough v. Baker, 47 Mo. 410; Bean v. Miller, 69 Mo. 384; Morgan v. Regan, 48 Mo. App. 461; Bank v. Fidelity & Deposit Co., 40 So. (Ala.) 415, 5 L. R. A. (N. S.) 418; Elliott on Contracts, sec. 3699. (4) The liability of a surety company cannot be extended by implication and the courts will carefully guard its rights and protect it against a liability not strictly without the expressed terms of its contract. Miller v. Suart, 9 Wheat, 680; Smith v. United States, 2 Wall. 234; Livingston v. Moore, 44 N. Y. Supp. 125; Page v. Kreaky, 137 N. Y. 307; National M. B. Assn. v. Conkling, 90 N. Y. 116. Here a new supplemental contract was entered into between the plaintiff city and the Katz Construction Company, without consent of or notice to defendant surety company, changing not only the work, plans and specifications, but the whole method of construction.

WALKER, P. J.—This is an appeal from an order granting a new trial. The appellant, the city of Kennett, to be designated herein as the city, brought suit in the circuit court of Dunklin County against the Katz Construction Company and the American Surety Company, to be designated herein respectively as the contractor and the surety company, each a corporation, upon a bond for $18,000 of the former as principal and the latter as surety, given to the city to insure the faithful performance of a contract for furnishing the necessary materials and labor to construct certain lines of sewers in the streets and alleys of the city and for the performance of other work incident thereto and necessary to facilitate the disposal of sewage, for which the contractor was to be paid a total sum of $35,204.06, in the amounts and at the times stated in the contract; and which contract it was alleged had been breached by the contractor. The surety company filed its separate answer. The city dismissed as to the contractor. A

change of venue was granted on the application of the surety company to Bollinger County where, upon a trial, a verdict was rendered for the city in the sum of eighteen thousand dollars. A motion for a new trial was sustained, unless the city would enter a *remittitur*. This it refused to do, and perfected its appeal to this court.

The contract and bond on which this action is based contains among other provisions, the following:

"And it is hereby expressly agreed by and between all parties thereto that no extension of time, or alteration in, addition to, or omissions from the work provided for under said contract, plans and specifications, although without consent of said surety, shall violate this bond or discharge said surety. . . .

"Upon request of the contractor, the engineer will, upon or about the first of each month, make an estimate of work done and material delivered for the previous month, and payment will then be made by the council for ninety per cent of said estimate."

The contract also provided that the work should be completed within nine months after its execution, which was in April, 1913, and for each day's delay the contractor should pay $5 per day as liquidated damages. Thereupon the contractor commenced work under the contract. Subsequently certain changes were made in the plans and specifications at the request of the contractor. According to the testimony of expert engineers these changes did not increase the cost of construction or entail a delay in the work.

The work progressed under the contract until September 1, 1914. During this time thirteen estimates were rendered by the contractor to the city, aggregating $32,436.86. Of this amount ten per cent was withheld in accordance with the contract to be paid upon the completion and acceptance of the work, and the contractor was paid the difference, to-wit, $29,193.17, less $645 held by the city for delays in the work, which constituted the aggregate up to that time of the penalty therefor of $5 per day as prescribed in the contract.

Thereafter estimate number 14 was rendered for work performed during the month of September, 1914, and the contractor was informed that the city was temporarily out of funds necessary to pay that estimate. The contractor then agreed that if the city would pay six per cent interest on the amount due, it would carry the warrant and proceed with the work, whereupon the warrant was issued for estimate number 14 and delivered to it, and same was later paid with interest thereon. Thereafter estimate number 15 for work performed during the month of October, 1914, was rendered by the contractor to the city, and was settled in the same manner as estimate number 14.

After the delivery by the city of its warrant to the contractor in payment of estimate number 15 and the acceptance of same by it, owing to the amount of water in the ground where the sewers were being constructed, it was mutually agreed that work on the system should be suspended until such time as it was practicable to resume operations. At the time this agreement was entered into the contractor had been paid for all work then performed.

The total estimate to this date for work performed amounted to the sum of $34,400.15. The amount paid to the contractor was $30,960.14. The difference between the total estimates for work performed and the amount paid the contractor was $4,390.01, $950 of same being the aggregate penalty for delays occasioned by the contractor, and the balance, $3,440.01, being the amount, ten per cent, authorized to be withheld until the completion of the work.

Conditions thereafter permitting that work be resumed, the city notified the contractor to proceed to complete the work and that funds were available for its payment. At that time the city had available the sum of $6100, for the payment of this work, or more than the balance due the contractor under its bid. The contractor refused to perform any more work under the contract. Whereupon the city gave notice to the surety company, as surety on the contractor's bond, of the

abandonment by the latter of its contract and requested the surety company to complete the work. This it failed and refused to do. Whereupon the city entered into another contract with one A. C. Brown, in an endeavor to effect the completion of the  sewer system in accordance with the original plans and specifications and the changes made at the request of the contractor, in which undertaking the city agreed to pay not exceeding $6100 for the completion of the work, and it expended this sum in that behalf, which was found not sufficient for the purpose. Thereupon this suit was brought to recover on the bond with the result stated. At the trial experts testified it would require an expenditure of $18,000 to $20,000, in addition to all former sums paid out by the city in that behalf, to complete the sewer system in accordance with the original specifications and the changes made. The jury returned a verdict in favor of the city and against the surety company in the sum of $18,000; the city having, as stated, theretofore dismissed the action against the contractor. A motion for a new trial was sustained on the ground, as stated in the order therefor, that the city had refused to enter a *remittitur*, but as disclosed by the record that the trial court had erred in not instructing the jury that the right of recovery should have been limited to $6,100, that being the amount the city had expended in attempting to complete the sewer system. Other conditions of the contract, facts in evidence, and actions of the trial court, will, if necessary for the proper understanding of the case and the determination of the issues, be set out in the opinion.

I. The general rule as to the extent to which this court will review a record upon an appeal from an interlocutory order, as in the instant case, is as follows: When an order for a new trial is granted for a specific reason, the appellant assumes no other burden of showing error than that which prompted the trial court's action. If other grounds are relied on to sustain the order, which have been preserved in the record, the

**Review on Appeal from Interlocutory Order.**

respondent must call the appellate court's attention to same or they will not be considered. [State ex rel. Bank v. Ellison, 266 Mo. l. c. 432; Benjamin v. Railroad, 245 Mo. l. c. 609; Emmons v. Quade, 176 Mo. l. c. 27; Millar v. Madison Car Co., 130 Mo. 523.]

The purpose of this rule is salutary. It sharpens the issues in enabling the appellant to directly combat the ruling of the trial court and limits the review, upon appeal, to the reasons for such ruling instead of requiring a consideration of all the issues raised during the trial. The statutory provision which directs that orders for new trials shall specify the grounds therefor (Sec. 2023, R. S. 1909) is, if nothing more, a legislative recognition of the wisdom of the rule.

An examination and an analysis, in the light of the record, of the order sustaining the motion for a new trial, will determine the rule of procedure applicable in a review of this case. It is as follows:

"Now come the parties herein by their respective attorneys and defendant's motion for a new trial again coming on to be heard, it is taken up, argued and submitted to the court, and the court being sufficiently advised in the premises, orders that the said motion should be sustained unless the plaintiff enters a *remittitur* of eleven thousand nine hundred dollars, which *remittitur* plaintiff now refuses to make. It is therefore ordered and adjudged by the court that said motion should be and is sustained, and a new trial herein ordered. To which ruling of the court the plaintiff objected and excepted at the time."

On its face this order may be construed as being based on an excessive verdict. Such a construction is tenable only upon a superficial consideration of the order. The authority to enter a *remittitur*, on account of an excessive verdict, is limited to cases where the jury finds for more than the amount authorized in the instructions. This was not the case here. The penalty of the bond, $18,000, was the limit, under the pleadings, of the city's right of recovery. The evidence sustained a finding in this amount under the instructions given. The order,

therefore, for the new trial could not have been based upon an excessive verdict, as this term is to be interpreted when relied upon as the reason for the granting of a new trial. The record, however, discloses that the real reason for the entry of this order was the giving of the city's instruction numbered 2, on the measure of damages, and the refusal of the surety company's instruction numbered 14, on the same subject. The city's instruction fixed the measure at whatever sum had been shown to the satisfaction of the jury to be necessary to complete the work after its abandonment by the contractor. The minimum amount so shown was $18,000; this the jury found. The surety company's instruction made this measure $6100, or the amount shown to have been actually expended by the city in an effort to have the work completed after its abandonment by the contractor. No analysis of abstruse legal principles is necessary, but a simple arithmetical calculation will suffice to determine not only what this order, from which the appeal was taken, means, but whether it is general or specific. To accomplish this we subtract $6100, the surety company's measure, from $18,000, the city's measure, which constituted the jury's verdict, and the remainder is $11,900, or the amount held by the trial court necessary to be remitted. It is evident, therefore, that the court reached the conclusion after the consideration of the motion for a new trial, that the city's instruction numbered 2 should have been refused, and the surety company's instruction numbered 14 given. The ground, therefore, for the sustaining of the motion for a new trial is specific in its nature, and was based upon the court's conclusion that it had, in the giving and refusing of instructions, erred in a matter of law, and therefore this review should be conducted under the rule first above stated. In reaching this conclusion we are not limited in determining the court's reason for granting the new trial to the mere letter of the order therefor; but, we may call to our aid other affirmative record facts necessarily explanatory of the court's action.

273 Mo.—19

Authorized to review the record, it would be an anomalous position to assume that we could not invoke it to enlighten us on this subject, especially when the presence of the case here is due solely to the granting of this order. The citation of precedents to sustain this conclusion is deemed unnecessary. However, this court has impliedly declared, although it did not, on account of the condition of the records in the cases cited, affirmatively hold, that a trial judge's written opinion in granting a new trial may be considered in determining his reasons therefor. [Hewitt v. Steele, 118 Mo. 463; Kreis v. Railroad, 131 Mo. 533.]

In addition, it is not inappropriate in defining the limit of our review, to say that the doctrine of a wide discretion with which courts are held, in a certain class of cases, to be vested in granting new trials, is inapplicable here. The giving of an instruction as to the measure of damages was the court's reason for its action. This was a matter of law. There can be no discretion as to the law of a case. It is only when the court's ruling is directed to the facts that the exercise of discretion is permissible. [Loftus v. Met. St. Ry. Co., 220 Mo. l. c. 481.]

Has the city, therefore, well sustained the burden it assumes in showing that the trial court, stript of discretion, has ruled erroneously in granting a new trial? If so, then the verdict should be upheld, unless the surety company has, in addition, called our attention to other matters in the record sufficiently prejudicial in their nature to warrant our ruling otherwise.

II. The contract provides that for the sum of $35,204.06 to be paid to the contractor as the work progressed, it agreed to become responsible for the entire work; and it was not to be released from any responsibility for any part of same until the work embraced in the contract had been performed and accepted. Upon the contractor's failure to comply with its contract, the measure of the city's right of recovery was whatever amount in excess of

*Measure of Damages.*

the contract price might be shown by the best obtainable evidence, was necessary to complete the work in accordance with the obligation. The purpose of this contract renders the foregoing conclusion apparent. Generally it was the installation of a sewerage system; on the part of the contractor it was to furnish the material and perform the work necessary to its completion; on the part of the city it was to secure the installation of the system for which it was to pay the contractor in the manner and to the amount stated. That the total amount agreed upon was subsequently shown to be far short of the sum necessary to complete the undertaking is, in the absence of fraud and mistake, immaterial. The measure of the city's recovery is not to be determined from what the contractor may have estimated would compensate him for the work. As we said in Peltz v. Eichele, 62 Mo. 171, "what the plaintiff has lost by the breach of the contract and not what the defendant has lost or gained is the measure of the damages." [Addington v. Cullinane, 28 Mo. App. l. c. 242; Jemison v. Governor, 47 Ala. 390; Hawley v. Beldon, 1 Conn. 93; Murray v. Jennings, 42 Conn. 9, 19 Am. Rep. 527.] The city contracted, not for a part of the work, but for the furnishing of the material and the installation of the system in an operative condition. Its failure to receive this through a breach on the part of the contractor entitles it to be made whole. In this connection it may be said, parenthetically but none the less pertinently, that the bond sued on is to be construed in connection with the contract. [Morganton Mfg. Co. v. Anderson, 165 N. C. 285, 39 Ann. Cas. 763.] To make the city whole it may, upon a satisfactory showing, recover whatever amount in excess of the contract price is necessary to complete the work after its abandonment by the contractor. Proof of the performance by the city of the uncompleted work does not constitute a condition precedent to its right of recovery. [King v. Nichols & Shepard Co., 53 Minn. 453; Railway Co. v. Carthage, 36 Ohio St. 631; City of Sherman v. Connor, 88 Tex. l. c. 42.]

The damages sustained by the city were not speculative; but were susceptible of as accurate determination as any other kind of work for which specifications have been prepared and estimates made. The material furnished and work performed was known. What had been done being known, it was not difficult to ascertain to a reasonable certainty the additional outlay necessary to complete the work. To determine this fact experts testified, who were familiar with the cost of the material and the amount of labor necessary to install a system of this character. [Railroad v. Hepner, 83 Tex. l. c. 140.] Exhaustive examinations disclosed their familiarity with the subject. They comprised engineers and contractors experienced either in the supervision or actual construction of this character of work. They agreed in the main as to the amount necessary to be expended to complete the work. Based thereon, Instruction Number 2 was given, and guided thereby, the verdict was rendered; the measure of damages having been correctly defined and the proof being ample, the trial court therefore erred in setting the verdict aside.

III. But it is insistently contended by counsel for the surety company, while not admitting the correctness of the manner in which the damages were estimated, that, if *arguendo* this be conceded, the damages are nevertheless of such a nature as to not be susceptible of that definite ascertainment necessary to sustain the judgment. What we have heretofore said should suffice to settle this question; but that nothing may be left undetermined let it be said further: in applying the rule against the recovery of uncertain damages, it is the uncertainty as to their nature and not as to their measure or extent that is meant. While the actual amount of damages from the breach of a contract may not be susceptible of exact proof, the law does not permit one whose act

Uncertain Damages, Proof.

has resulted in loss to another to escape liability on this account. The manner of measuring the damages having been ascertained, impossibilities in proving same are not required, but only that the best evidence be adduced, of which the nature of the case is capable; in other words, the degree of certainty of the proof is dependent upon the character of the proceeding. Why should greater certainty be required as to proof of the amount of damages than in respect to any other part of a case? All that can be expected in any case is that the relevant facts tending to show the extent of the damages be placed before the jury to enable it to make such an intelligent estimate of the same as the circumstances of the case will admit. [Couch v. Railroad, 252 Mo. 1. c. 37; Brokerage Co. v. Campbell, 164 Mo. App. 1. c. 20; Norman v. Vandenberg, 157 Mo. App. 1. c. 490; So. R. Est. Co. v. Bankers Co., 184 S. W. (Mo.) 1035; Wolcott v. Mount, 36 N. J. L. 1. c. 270; Allison v. Chandler, 11 Mich. 1. c. 555.]

IV. It is contended that the manner of estimating the damages, although admitted to be authorized in ordinary cases, is inapplicable here in account of the presence in the contract of section 13, *Limitations on Right of Action.* the substance of which is as follows: "If the contractor shall abandon the work or shall neglect or refuse to comply with the engineer's instructions, or shall fail in any manner to comply with this contract, the board of aldermen shall have the right, with the consent of the mayor, to annul and cancel this contract and to complete same at the expense of the contractor."

This contention is urged on the ground that this provision is mandatory and exclusive and leaves no other remedy in the city upon a breach of the contract. There is no merit in this contention. The most casual reading leads to the conclusion that while the grant of power in the board of aldermen is complete, the right to exercise it is purely permissive. The

words of the provision, "shall have the right" as applied to the board of aldermen, mean no more than that the board is empowered, etc. If this provision be construed as contended by counsel, the right of action as instituted does not exist; for, if, as asserted, the doctrine of *expressio unius,* etc., be applicable, then the right of the city to proceed against the surety company is unauthorized. This contention is not only untenable, but is in direct conflict with the implied admission of. the surety company's liability for the amount ($6100) actually expended by the city in an effort to complete the work after its abandonment by the contractor, as indicated by the surety company's request for Instruction Number 14. As a case is tried below it should be presented on appeal. [Jones v. Pulitzer Pub. Co., 240 Mo. 200.] Waving this inconsistency, however, and construing the provision according to a fair interpretation of its terms in harmony with other portions of the contract, it constitutes, not an exclusive grant of power, but a declaration of a right which the board, in its discretion, may invoke or proceed under the general power given in like cases for a violation of a contract.

V. Certain testimony, that of the experts introduced by the city, is objected to as wholly irrelevant and insufficient to sustain the judgment. This complaint has in effect been disposed of. It will only be necessary, therefore, in passing, to say that the conclusion we have heretofore reached as to the manner in which damages of the character here under review may be shown, and the further fact that the city is not limited in its right of action to section 13 of the contract, disposes of this objection adversely to the contention of counsel for the surety company.

*Testimony of Experts.*

VI. The remarks of counsel for the city during the trial are pressed upon our attention as prejudicial error. To constitute such error as to influence our

**Remarks of Counsel** action in the disposition of this case the remarks or conduct must have been such as to render it reasonably probable that prejudice to the surety company resulted therefrom. The burden of this complaint, without wearily repeating the exact words charged to have been used by counsel, are to the effect that the surety company had failed to put the contractor, who was in the court-room throughout the trial, on the witness stand to question or in anywise vary the testimony of the experts examined by the city in proof of the cost of the completion of the work.

Whether this be construed as a comment on the conduct of a party to the suit, or as a failure to introduce the contractor as a witness, the rule as to the propriety of the remarks is the same. In alleged errors of this character it must appear that the prejudicial effect of same was sufficient to influence the rendition of the verdict; otherwise, it will not be regarded as material. [Gulf, C. & S. F. R. R. Co. v. Curb, 66 Fed. 519, 13 C. C. A. 587.] In the application of this rule liberal latitude is allowed counsel in their deductions from the evidence. [Jaggard v. Railroad, 264 Mo. 142.] While the cases are not numerous on this subject, the rule is nevertheless well established as to the right of counsel to comment upon the failure of a party to testify in his own behalf in a civil action. Only impliedly has the question been passed upon in this court. In Scullin v. Wabash Ry. Co., 184 Mo. 695, it was held that the remarks of counsel for the plaintiff, who in his argument stated that defendant could have gone to the scene of the accident and with the same train determined within what distance it could have been stopped and then could have brought its witnesses and had them swear to this fact, were not such a violation of legitimate argument as amounted to error. The Kansas City Court of Appeals has more directly passed upon this matter. In Stagner v. Rich Hill, 119 Mo. App. 281, an action against a city for injuries from defects in a sidewalk, it was held that

it is not improper for plaintiff's counsel to refer to the non-production of some of the city officials as witnesses on the subject of notice of the condition of the sidewalk. Elsewhere the subject has received more conclusive consideration. In Hull v. Douglass, 79 Conn. 266, it appeared that the defendant was present in the court-room during the trial and failed to testify in denial of any of the testimony produced by the plaintiff or to offer any explanation for his failure so to do. The court ruling upon same, held that plaintiff's counsel had the right to refer to this fact in his argument as well as to emphasize it; the court's language being as follows: "It was fairly within the latitude allowed to counsel in argument to call it a refusal on the defendant's part to take the stand in his own defense." In North Carolina it is held in a number of cases that the failure of the defendant to testify is a legitimate subject of comment before the jury, subject to the control and discretion of the presiding judge. [Ledford v. Emerson, 141 N. C. 596; Hudson v. Jordan, 110 N. C. 250; Goodman v. Sapp, 102 N. C. 477.] To a like effect see: Lynch v. Peabody, 137 Mass. 92; Railroad v. Partlow, 14 Rich L. (S. C.) 237; Gilman v. Williams, 74 Vt. 327. No different principle is involved when the remark is applied to a failure to introduce the testimony of a witness other than a party to a suit. [Ledford v. Emerson, supra; Devries & Co. v. Phillips, 63 N. C. 53.]

The remark complained of that the "American Surety Company was incorporated in this State to do business for hire" cannot under a reasonable interpretation of same be held to have been prejudicial. It was but a characterization of the company's nature and the purpose of its creation. This was certainly permissible and in making it counsel did not state other than the truth or under the guise of argument assume the functions of a witness. The words employed do not indicate that they were expressed in a manner to which serious protest can be urged. The objection to same must therefore be held to be trivial.

VII.   The surety company complains of the refusal of its instructions numbered 7 and 8, which submitted

**Instructions Refused.**

to the jury the question as to whether the city had not entered into another and a different contract with the same contractor subsequent to the making of the original contract for the performance of the same work without notice to or the approval of the surety company; and if they so found, their verdict must be for the latter.  Whatever may be said as to the correctness of these instructions in view of the terms of the original contract and the facts in relation to the so-called second contract, there is no merit in this contention.   The trial court had theretofore given the city's instruction numbered 9, which clearly and succinctly submitted this issue to the jury.   No error can be predicated upon the refusal of these instructions, therefore, when the material features of same were embodied in others given.   Mere iterations of what has already been clearly declared serve rather to confuse than enlighten and are therefore unnecessary. [Beauchamp v. Pike County, 251 Mo. l. c. 538; Downs v. Tel. Co., 161 Mo. App. l. c. 282; Murphy v. Clancy, 177 Mo. App. l. c. 446.]

A like reason authorized the trial court to refuse the surety company's instructions numbered 12 and 13, as to what constituted a failure to make payments for work performed under the terms of the contract and the consequent nonliability of the surety company if such proof satisfied the jury.   These instructions were covered by the surety company's instruction numbered 10, which had been given by the court. When an issue has been definitely defined for the guidance of the jury, the refusal of instructions in detail comprehending the same subject will not constitute error.

VIII.   It is contended that changes in the construction of the system agreed to by the city and the

**Changes in Construction: Effect of.**

contractor subsequent to the execution of the contract released the surety company from liability.  Not only the contract, but

the bond as well, as is evidenced by a copy of the provision in regard thereto, set out in its own words in the statement of the facts, provided that extensions as to time, alterations in, additions to, or omissions from the work as required in the contract, plans and specifications should not violate the bond or discharge the surety company, although made without the consent of the latter.

The surety company in signing the bond made this provision as much a part of its agreement as any other portion of the obligation. What was shown to have been done thereunder was, therefore, with the express assent of the surety company and did not change its obligation. [Howard County v. Baker, 119 Mo. l. c. 405; Hax-Smith Furn. Co. v. Toll, 133 Mo. App. 404; Ashenbroedel Club v. Finlay, 53 Mo. App. 256; Reissaus v. Whites, 128 Mo. App. 135; Fidelity Co. v. Robertson, 136 Ala. l. c. 409; People's Lumb. Co. v. Gillard, 136 Cal. 60; Lumber Co. v. Surety Co., 124 Iowa, 619; Kretschmar v. Bruss, 108 Wis. 396; Blauvelt v. Kemon, 196 Pa. St. 128.]

The exception to this rule is when it appears that the changes made are so extensive as to substitute a different contract from the original. [Swasey v. Doyle, 88 Mo. App. 536; Miller-Jones Furn. Co. v. Ice Co., 66 Ark. 287; Consaul v. Sheldon, 35 Neb. 247; House v. Surety Co., 21 Tex. Civ. App. 590.] There is no evidence of such changes here. On the contrary, expert witnesses testified that the changes were advantageous to the contractor, in that they entailed no additional time and lessened the cost of construction. When this is the case the rule is not applicable even in the absence of an agreement as to the changes by the surety; the test of the application of the rule generally being evidence of such a change as will increase the surety's burden either in the cost of construction or an extension of the term of performance. [Benjamin v. Hillard, 23 How. (U. S.) 149; Prescott Nat. Bank v. Head, 11 Ariz. 213, 21 Ann. Cas. 990.] Absent these, there is no injury and hence no ground of complaint. The surety company, however, is precluded from making this defense under

the facts herein.  In its instruction numbered 9, given by the court, this question of a release on account of changes was squarely submitted to the jury which found against the contention of the surety company.  That this instruction fairly submitted the facts in regard to the changes cannot be questioned by the surety company. The jury's finding, therefore, is binding on this court and will not be disturbed.  [Diamond v. Mo. Pac. Ry. Co., 181 S. W. (Mo.) 12; Nichols v. Thompson, 181 S. W. (Mo.) 385.]

IX.  The rule as to the binding effect of the jury's finding is also applicable to the contention that the city failed to comply with its contract in regard to the manner of payment for work performed and hence that the contractor was released from its obligation.  There was evidence *pro* and *con* on this subject and the matter was submitted to the jury in instruction numbered 10 requested by the surety company.  The verdict of the jury constitutes a finding contrary to the contention of the surety company that payment had not been made in whatever amount was due the contractor at the time of his refusal to continue the work, and further controversy in regard thereto is foreclosed. [Britt v. Crebo, 199 S. W. (Mo.) 154.]

*Jury's Finding of Fact: Conclusive.*

The latitude indulged in by both parties in the trial of this case and the loose manner in which the business was conducted by the city and the contractor subsequent to the execution of the contract, as evidenced by the record, necessitated our combing this voluminous transcript that a fair determination of the matter at issue might follow.  Familiar with the facts, therefore, we have reached the conclusion that the court below was not authorized in granting a new trial.  We therefore direct that the verdict of the jury be reinstated and that a judgment be entered in accordance therewith.  It is so ordered.

*Conclusion.*

Reversed and remanded with directions.  All concur.