STATE of Missouri ex rel. STATE HIGH-
WAY COMMISSION of Missouri,
Plaintiff-Respondent,

v.

E. A. THURMAN et al., the Exceptions of
John Paul Skaggs, et al., Defendants,
John Paul Skaggs, Glenda Skaggs, Charles
F. Skaggs, Marjorie Susan Skaggs, Ray-
mond L. Skaggs and Martha Ann Skaggs,
Defendants-Appellants.

No. 32918.

St. Louis Court of Appeals.
Missouri.

May 21, 1968.

---

Schnapp, Graham & Reid, Fredericktown, for defendants-appellants.

Roberts & Roberts, Farmington, George Dawes, Stan Murphy, State Highway Commission of Mo., Sikeston, Robert L. Hyder, State Highway Commission of Mo., Jefferson City, for plaintiff-respondent.

DOUGLAS W. GREENE, Special Judge.

This is an action in condemnation to obtain easements for the construction of limited access Highway U.S. 67. Defendants owned the surface rights to 777 acres of land near Fredericktown, Missouri, the mineral rights having been reserved. The land was located on State Road H to which defendants had unlimited access. The easement for the Highway 67 right-of-way cut across defendants' land, leaving 9.72 acres on the east side of the proposed new highway. A twenty foot entrance was provided on the plans for direct access to U.S. 67 from this tract. A total of 23.03 acres was actually taken by condemnation. A natural spring, on defendants' land, which they were using as a livestock farm, was taken, as well as 4300 feet of fencing. The balance of defendants' land on the west side of U.S. 67 has no direct access to U.S. 67 but does have access to State Road H, as it had prior to condemnation.

Defendants were awarded $6,636.00 by commissioners appointed by the court. Defendants and the State Highway Commission filed exceptions. At the trial, the jury returned a verdict for $5,000.00. From the judgment upon the verdict, defendants appeal.

In their opening statement, defendants contended that the highest and best use of their property was for building lots and that because they were not allowed a direct access to U.S. 67 the value of that part of their land was now useless for building sites, for which they claimed damages of $14,000.00, or all but $5,000.00 of their total claimed damages.

The Highway Commission in its opening statement countered by saying that the reason the defendants had no direct access to U.S. 67 was that they had voluntarily requested that the Highway Commission move the direct access entrance, that had been provided on the preliminary plans, from their land to that of their parents which adjoined their property, and that the access entrance was moved as requested. The statement was made over objection of defendants. Defendant Charles Skaggs, on cross-examination and over objection, identified the letter he and his brothers had written the commission requesting that the entrance be moved.

▪ Defendants contend that the action of the trial judge in overruling their objections to remarks of the Highway Commission's counsel in his opening state-

ment and his cross-examination of defendant Charles Skaggs on the matters referred to above was prejudicial error. Defendants contend that the change of entrance site at their request was preliminary negotiations and offers between the parties, and was therefore not admissible. We do not agree. There was no evidence in the record to support this contention. The request by defendants that the direct access entrance location be changed was for their own benefit. They farmed their parents' land, as well as their own, and had a power of attorney to manage and control it. If a person voluntarily relinquishes a property right for his own benefit, he cannot then ask for damages for a loss of that right, and the opposing party is entitled to show that such relinquishment was at the request of such party. The fact that defendants requested that the entrance be taken from their property and wrote a letter to that effect were admissions against interest that the jury could consider, along with other evidence as to whether or not defendants actually intended to use their land as building lots. We rule this point against defendants.

As part of their proof that the highest and best use of their land was for building lots, defendant Charles Skaggs testified as follows:

"Q. That area, now Charlie, that the Highway Department took, what was the highest and best use of this property?

"A. Building lots.

"Q. All right, will you state whether or not there was a demand for building lots in this area at that time?

"A. Definitely, yes.

"Q. Just on Highway H or any place else?

"A. There was a demand in the entire area. The areas outside of town with a good access road in.

"Q. Did you ever have an opportunity to sell any of this property, which they took, for building lots?

"A. Yes sir.

"Q. More than one?

"A. Yes sir.

"Q. And prior to the time of this condemnation?

"A. Yes sir."

This testimony went in without objection.

During the closing argument by the State Highway Commission the record shows the following:

"Mr. Roberts: * * * Another thing, since 1949, they have owned that property and if lots were selling for a Thousand Dollars a piece for the little piece of property they had right along here, ten of them, and they could have got Ten Thousand Dollars for them, you know and I know they would have sold them off. Why didn't they? Because they weren't good building lots.

"Mr. Schnapp: That's not the testimony in this case and I object to that argument, the only testimony in this case is, Mr. Skaggs had offers for the purchase of that property which he refused.

"Mr. Roberts: Now, if he wants to make a speech I'll take my time out and let him make it.

"The Court: Let's proceed.

"Mr. Roberts: All right. Mr. Skaggs said he had offers for that property and he's the owner, he's the one that wants you to give him a lot of money, but did he bring anybody in here that made an offer to him? No.

"Mr. Schnapp: If it please the Court, Mr. Roberts knows it would be highly improper testimony to submit to a

jury, that evidence of an offer is not admissible.

"Mr. Roberts: It certainly is.

"Mr. Schnapp: You can't submit that kind of testimony or I'd have had this court room full of just such people, if Your Honor, please, in view of that statement I want to ask, at this time, the jury be discharged and this declared a mistrial because [of] that highly prejudicial statement in front of this jury.

"The Court: Overruled, let's proceed.

"Mr. Roberts: I say to you again and I repeat it, had there been any offers made to buy that property, at anything like a decent price, they would have had them in here and told you about it.

"Mr. Schnapp: If it please the Court, again I object.

"The Court: Overruled, proceed."

Defendants in their closing argument made the following argument:

"Mr. Schnapp: "* * * A house here along J Road proves that this property was suitable and adaptable and you heard Charley Skaggs testify and they didn't deny it, that isn't contradicted, that people came to him and wanted to buy these lots but that he didn't want to sell them at that time. I submit to you that the law prohibits us from showing the amount of money that was offered to him from these building lots.

"Mr. Roberts: If the Court please, I object to that and move it be stricken and the jury instructed to disregard it.

"The Court: It's improper argument, disregard it."

Defendants contend that the comments of Mr. Roberts in his closing argument and the court's overruling of their objections was prejudicial error, as was the court's ruling sustaining Mr. Robert's objection and ordering the jury to disregard Mr. Schnapp's statement in closing argument that the law prohibited him from showing the amount of money that was offered Charles Skaggs for the land as building lots.

■ In a proceeding to condemn land, the landowner may show that the property is adaptable for building sites. In re Armory Site in Kansas City, Mo., 282 S.W.2d 464. As part of his proof, a landowner may testify that he has had inquiries or offers to buy the property from others, as such testimony is relevant on the question of the desirability of and demand for the land, and indicates an active interest in the land on the part of prospective buyers. City of St. Louis v. Vasquez, Mo., 341 S. W.2d 839, 1.c. 848. This does not mean that the landowner could testify as to the *amount* of the offers, as such testimony would not be proper, at least when not testified to by the offeror, as such testimony, as evidence of value, would be hearsay and could open the door to collusion and fraud. State ex rel. State Highway Commission v. Koberna, Mo., 396 S.W.2d 654, 1.c. 665. Defendants' counsel evidently recognized this and stayed away from questions as to how much had been offered.

■ The closing argument by the attorney for the State Highway Commission, in which he said: "* * * had there been any offers made to buy that property, at anything like a decent price, they would have had them in here and told you about it," coupled with the court's overruling of defendants' objection to that argument, plus the court's instruction to the jury to disregard defendants' attorney's statement to the jury that the law prohibited him from showing the amount of money that was offered to him for the land was error, as it amounted to misdirection of the jury, was an expression of assent and approval

by the court to erroneous statements of law, and was prejudicially erroneous. State ex rel. State Highway Commission v. Thurman, Mo.App., 391 S.W.2d 603.

We are familiar with the rule that to be reversible error improper argument by counsel and assent to such remarks by the court must have been of such importance as to render it probable that prejudice to the opposing party resulted therefrom and the jury was influenced thereby in the rendition of its verdict. City of Kennett v. Katz Construction Co., 273 Mo. 279, 202 S.W. 558, 1.c. 562.

Here the question of whether the land's highest and best use was for building lots was the crucial point in the case, and the improper argument was on that very issue.

The defendants claimed $14,000.00, or over two-thirds of their total claimed damages for loss of use of the land as building lots. The jury verdict was for $5,000.00 which was substantially less than the commissioners' award. Under these circumstances, we cannot say with any degree of certainty that the error was not prejudicial to defendants.

The judgment is reversed and the cause remanded for a new trial.

ANDERSON, P. J., and RUDDY, J., concur.