STATE of Missouri, ex rel., MISSOURI HIGHWAY AND TRANSPORTATION COMMISSION, Plaintiff/Respondent,

v.

William J. MATULA, et al., Exceptions of William J. Matula, et al., Defendants/Appellants.

No. 66626.

Missouri Court of Appeals, Eastern District, Division Four.

Nov. 7, 1995.

---

John G. Young, Jr., St. Louis, for appellants.

Kelly-Ann B. Radetic, Sr. Asst. Counsel, Chesterfield, Rich Tiemeyer, Chief Counsel, for respondent.

GRIMM, Judge.

Plaintiff Missouri Highway and Transportation Commission (MHTC) condemned 4.127 acres of owner's[1] property in St. Louis County, Missouri. The jury assessed damages of $1,426,333. Owner appeals; we affirm.

Owner's brief contains six points. The points primarily allege trial court error in the refusal and admittance of testimony.

## I.

Owner has a background in the oil and gas business. After working for other companies, in the early 1970's, he opened his first station. Thereafter, he developed and opened a number of stations, as well as office buildings and residential subdivisions.

Owner purchased approximately 13.25 acres, including the subject property, in December, 1986. He paid $758,000 for it, planning to create a real estate development on the tract.

Over MHTC's objection, owner presented the following testimony. Owner testified about specific improvements he made to the property from 1987 to 1989. He said that he paid for clearing and grading work, sewers, and highway improvements. The total cost of this work was $317,349.

During the development period, owner attempted to sell the property. In February, 1988, he sold approximately two acres to State Farm Mutual for $610,783.50.

In June, 1988, owner submitted preliminary plans of development to MHTC for review. Later that month, MHTC's district engineer advised owner that a realignment of Highway 141 would result in MHTC taking "most if not all of this parcel in the future." Nevertheless, owner proceeded with the development.

Owner testified about a number of individuals and companies that expressed "interest" in the property. None of them resulted in contracts for the purchase or lease of any of the property.

One of the individuals owner spoke to was Lester Carter, a representative of Mobil Oil. Owner identified correspondence he had with Mr. Carter from August, 1989 through March, 1990. The focus of the appeal concerns this correspondence, and specifically Exhibit JJ.

Exhibit JJ is labeled "Option and Contract for Purchase of Real Estate." This document identified owner as seller and Mobil Oil Corporation as purchaser. By its terms, the price for 41,028 square feet, known as outlot parcel A, was $492,000. Mobil paid $10.00 at the time owner signed and was to pay $2000 more within 20 days for a 90 day "option period pursuant to the provisions of Paragraph (16a) below."

Paragraph 16(a) states:

In consideration of two thousand ten ($2010.00) dollars paid to Seller by Purchaser, receipt of which Seller acknowledges, this agreement shall be considered an option in favor of the Purchaser to purchase the property described. This option may be exercised by Purchaser by

1. The property is owned by Mr. and Mrs. Matula. However, Mrs. Matula did not take an active part in the property's development. Only Mr. Matula testified. Therefore, for ease of reading, we refer to the owners in the singular.

delivery to Seller of a duplicate original of this agreement executed by Purchaser at any time on or before the ninetieth (90th) day after Seller signs this agreement.

Mobil never paid the additional $2000 and never signed the agreement. Mobil's interest in the property changed within 20 days after owner signed the document.

At trial, owner described his property as consisting of four parcels. Outlot parcel A was about one acre in the southeast corner of the property. Its best use was as a service station, and he valued it at $12 a square foot. Parcel B was approximately two acres. Its best use was as a restaurant, bank, or tire store. He valued it at $10 per square foot. He considered the area behind parcels A and B as secondary commercial with a $6.85 per square foot value. The remaining acreage had a best use as residential property with a $15,000 per acre value.

On February 7, 1992, MHTC took 4.127 acres, plus a permanent easement. Owner testified that before the taking, his property was worth $2,516,255 and after taking $150,-000. Thus, his damages were $2,366,255. His expert, Richard Buckles, placed the before value at $2,300,000 and the after value at $100,000.

On the other hand, MHTC's expert placed the before value at $1,300,000 and the after value at $380,000. Thus, he computed owner's damages at $992,000. The jury awarded $1,426,333 and the trial court entered judgment accordingly.

## II.

◼ In his first point on appeal, owner claims the trial court erred in failing to permit his "expert, Richard Buckles, to testify about the Mobil contract as a basis for his opinion." He contends this testimony was admissible under the principles of *State ex rel. State Highway Comm'n v. Pfizer, Inc.,* 659 S.W.2d 537 (Mo.App.E.D.1983) and also pursuant to § 490.065.[2]

In *Pfizer,* this court recognized that a "bona fide unaccepted offer to buy" land can be admitted as part of the expert's basis of

an opinion of value. *Id.* at 541. In deciding whether the offer is bona fide and should be admitted, we quoted with approval a test established in *City of Chicago v. Harrison–Halsted Bldg. Corp.,* 11 Ill.2d 431, 143 N.E.2d 40, 45 (1957).

We also recognized that the "burden is upon the party seeking to have such evidence admitted to establish a sufficient foundation by showing that the offer was *bona fide,* for cash, and made by a person able to comply with the offer if it were accepted." *Pfizer,* 659 S.W.2d at 542 (quoting *City of Chicago,* 143 N.E.2d at 45) (emphasis original).

Here, owner did not establish a sufficient foundation. The Mobil document was not a *bona fide* offer to purchase owner's property. Rather, it was only an option to purchase owner's property. As such, it does not fall within the principles of *Pfizer.*

Further, in reality, the Mobil document was a 20 day option to have a 90 day option to purchase the property. Mobil did not exercise its 20 day option to extend the option. Also, the Mobil document contained several contingencies, including the signalization of an intersection and substantial completion of another street. These contingencies were not met.

In *Pfizer,* we acknowledged that a trial court "has great discretion in admission of offers into evidence." *Id.* As noted, the Mobil document was not an offer, and it was also subject to several contingencies. Thus, the trial court did not abuse its discretion under *Pfizer* in refusing to permit Buckles to testify about the Mobil document.

In the alternative, owner contends that § 490.065 "requires the admission through the expert's testimony of the terms of the Mobil contract once it was demonstrated that the basis for the expert's opinion is of a type reasonably relied upon by experts in the field while forming their opinions and was otherwise reliable."

Section 490.065.3 provides:

The facts or data in a particular case upon which an expert bases an opinion or inference may be those perceived by or made

---

2. All statutory references are to RSMo 1994.

known to him at or before the hearing and must be of a type reasonably relied upon by experts in the field in forming opinions or inferences upon the subject and must be otherwise reasonably reliable.

Owner points to Buckles' testimony, presented in an offer of proof, that professional appraiser's rely on the text, *The Appraisal of Real Estate* published by the Appraisal Institute. He quoted from page 370 which says:

> To apply the sales comparison approach, an appraiser gathers data on sales, contracts, offers, refusals, options, and listings of properties considered competitive with, and comparable to, the subject property.

Further, Buckles testified that he spoke with owner and Mobil's representative concerning the option. He concluded that the option was a bona fide offer and one on which he would rely in determining a value for the property. Based on his testimony, owner argues that § 490.065.3 "mandated that the Trial Court allow the testimony about the Mobil Contract."

In support, owner relies on *Wulfing v. Kansas City S. Indus.*, 842 S.W.2d 133 (Mo. App.W.D.1992). In *Wulfing,* appellant contended that the trial court erred in admitting an expert's opinion because that opinion was based on hearsay evidence not reasonably relied upon by experts and not otherwise reasonably reliable. *Id.* at 150. The *Wulfing* court disagreed, and in the opinion discussed § 490.065.

In addressing that section, the court referred to McCORMICK ON EVIDENCE. *Id.* at 152. In § 15, McCormick expounds on the federal counterpart to § 490.065 which applies to the admission of an expert's opinion based on reports of others and inadmissible or unadmitted data and facts. 1 KENNETH S. BROUN, ET AL., McCORMICK ON EVIDENCE § 15 (John William Strong, ed., 4th ed. 1992). He observes that the "principal problem presented" is the interpretation of the words "reasonably relied upon" and "otherwise reasonably reliable." *Id.* at 65.

McCormick discusses two approaches. The first approach allows the judge to "rely on the expert's view in judging whether the standard of the rule is met at least in matters in which the judge is not equipped to 'second guess' the expert." *Id.* The second approach allows the court to examine the reliability of the expert's sources. *Id.*

McCormick says that neither approach is flawless. "The difficulty with the [first] approach is that a party can employ an expert to place untrustworthy facts, data, or opinions before the jury. Under the [second] approach, a court may exclude material on which an expert may actually rely in the expert's practice. On balance the [second] approach is preferable." *Id.* at 65–66.

Our review of this point is limited to an abuse of discretion standard. *Koedding v. Kirkwood Contractors, Inc.,* 851 S.W.2d 122, 126 (Mo.App.E.D.1993). We cannot find that the trial court abused its discretion under either approach. Under the first approach, the trial court had sufficient knowledge and information to determine whether the Mobil document met the "reasonably reliable" standard. Under the second approach, the trial court had the duty to examine the reliability of the evidence. Point denied.

### III.

In his second point, owner claims the trial court erred by refusing to allow Lester Carter "to testify about his opinion of the value of Outlot Parcel A." His argument is in three subpoints which we address in order.

### A.

First, owner contends "the trial court erred in refusing to allow Carter to testify as to his opinion of the value of outlot parcel A since he was a qualified, experienced real estate professional familiar with the value of the property." However, owner does not support this contention in his brief.

Rather, owner's brief states:

> *If* the Court's reason was that Carter was not properly able to testify, Carter was qualified as an expert witness.... *Another possible reason* for the Trial Court's ruling.... (emphasis added).

Nothing in the record indicates the trial court barred Carter's testimony on the grounds stated. This subpoint is denied.

### B.

■ We consolidate owner's subpoints B and C. In subpoint B, he contends the trial court erred because "Carter's opinion of the value of outlot parcel A in December 1990, was information which an ordinarily prudent person would take into account in reaching a conclusion about the value of outlot parcel A." In subpoint C, he contends the trial court erred because "Carter's opinion of value of outlot parcel A as of the date of taking, which was shown to be the same opinion of value of that property in December, 1990, since there was no change in market conditions in St. Louis during that period, was information which an ordinarily prudent person would take into account in reaching a conclusion about the value of the condemned property."

Considering that the date of taking was February 7, 1992, the trial court was liberal in permitting Mr. Carter to testify about his involvement with this property in 1988, 1989, and 1990. Over a relevancy objection, he testified about various locations he evaluated in 1988 and 1989 for a Mobil Oil station. When other sites were unavailable, outlot parcel A became "priority one."

Mr. Carter described in great detail the steps he took concerning owner's property beginning March, 1989. He stated that he reached the conclusion that Mobil should purchase the property.

Due to a prior ruling on a motion in limine, owner made an offer of proof. In the offer, Mr. Carter testified that he determined in the spring of 1989 that the highest and best use for outlot parcel A was a high volume retail use. He described the comparable sales he used to arrive at his opinion that $12 per square foot was the value of outlot parcel A. He reached that opinion in the spring of 1989. It did not change when owner signed the option on March 21, 1990. He still held that opinion at the end of 1990.

Mr. Carter testified that he worked in the St. Louis area until December, 1990. At that time, he was transferred to the east coast. After that, he said he had "a general knowledge of the activities in the [St. Louis] real estate market." He was then asked,

Based on that knowledge of the St. Louis market between December of 1990 and February 7 of '92, are you aware of any significant change in market conditions that would change your opinion of outlot Parcel A?

He responded, "No, I wasn't aware of anything that would have changed my opinion of value."

In sustaining the original motion in limine concerning Mr. Carter's proposed testimony, the trial judge commented that an expert's "evidence as to the value in 1990 or 1989 doesn't have any relevancy to this case." In rejecting the offer of proof, the trial judge adopted his previous ruling.

■ Compensation is determined as of the "date of taking." *State ex rel. Highway & Transp. Comm'n v. Starling Plaza Partnership*, 832 S.W.2d 518, 520 (Mo. banc 1992). Here, the parties agreed that the date of taking was February 7, 1992. The trial court did not abuse its discretion in excluding testimony of value approximately two years before the date of taking.

■ We turn to the other question directed to Mr. Carter concerning his opinion of value as of February 7, 1992. During the hearing on the motion in limine, the trial court learned that Mr. Carter's deposition was taken in February, 1994, approximately 90 days before trial. In arguing the motion, MHTC's counsel referred the court to page 71 of the deposition. There, MHTC's counsel asked Mr. Carter his opinion of value of owner's property as of the first week of February, 1992. Mr. Carter replied, "1992. I don't have an opinion of value as of 1992."

The trial court reserved a ruling on Mr. Carter's testimony, saying, "I'll see what kind of foundation you come up with on that." Later, as mentioned, Mr. Carter testified that he had been away from St. Louis for more than a year before February, 1992. At the time of deposition and at trial, Mr. Carter resided in Maryland.

■ Our review is limited to an abuse of discretion standard. *Koedding*, 851 S.W.2d at 126. Considering the facts, we cannot say the trial court abused its discretion in refus-

ing to allow Mr. Carter to express his expert opinion of value as of February, 1992. These subpoints, and the point, are denied.

## IV.

■ Owner's third point is similar to his first point. The basic difference is that the first point concerns the Mobil document and witness Buckles, while this point concerns the Mobil document and witness Carter. Our previous discussion disposes of the arguments raised here, with one exception.

Owner raises one new argument. He claims the Mobil document should have been admitted under the doctrine of curative admissibility.

■ The doctrine of curative admissibility permits a party to reply to inadmissible evidence introduced by the opposing party with similar evidence if its introduction would remove any unfair prejudice caused by the earlier inadmissible evidence. *Phoenix Redev. Corp. v. Walker*, 812 S.W.2d 881, 886 (Mo.App.W.D.1991). This doctrine requires the rebuttal evidence to be of the same type or character as the earlier inadmissible evidence. *Id.* The admission of curative evidence is within the trial court's discretion. *Id.*

In cross-examination, MHTC asked owner if he had committed to Mobil to build a road. Owner replied that there was. a commitment in the contract.

On redirect, the trial court allowed owner to introduce the parts of the Mobil document that addressed the road expansion. In addition, owner testified that "Mobil's interest confirmed my belief that I could get $12 a square foot for the property." We find no abuse of discretion in refusing to admit the entire Mobil document. Point denied.

## V. .

■ In his fourth point, owner claims the trial court "erred in permitting [MHTC] to present evidence of zero value when there was no evidence of any dedication of the property presented to the jury and to take a portion of [owner's] property while paying zero dollars for that property since a taking with no compensation is an unconstitutional taking."

Without objection, MHTC's expert witness testified that the before taking value of owner's entire tract was $1,300,000. The after-taking value was $380,000. Thus, owner sustained damages of $992,000.

During an extensive cross-examination, owner's counsel asked how much square footage was left for commercial development. MHTC's expert witness indicated that he differed from what owner's expert Buckles had computed, because Buckles did not delete right of way for a required road and other access areas. He said he deleted this area because it had no contributory value.

■ Owner did not preserve this alleged error for review. Owner did not object until after the testimony was given. In such a situation, the objecting party must move to strike or withdraw the evidence from the jury's consideration. In the absence of such motion, the question of admissibility is not reviewable. *Kilgore v. Linville*, 733 S.W.2d 62, 64–65 (Mo.App.E.D.1987). Point denied. .

## VI.

■ In his fifth point, owner alleges the trial court "erred when it refused to admit [owner's] evidence to show how interest in buying the subject property or a portion thereof terminated when prospective purchasers learned of the inclusion of the subject property in the condemnation for highway 141."

Owner contends that *State ex rel. State Highway Comm'n v. Thurman*, 428 S.W.2d 955 (Mo.App.E.D.1968) supports his position. In that case, this court recognized that a landowner could testify that he had "inquiries or offers to buy the property from others." *Id.* at 958. This testimony is relevant on the desirability of and demand for the land to show that the property is adaptable for building sites. *Id.* However, nothing in *Thurman* suggests that a landowner can testify about interest in the property terminating when property becomes subject to condemnation.

Owner recognizes that there is no procedure for compensation of a landowner for decline in value caused by "condemnation blight." *State ex rel. Missouri Highway &*

*Transp. Comm'n v. Edelen,* 872 S.W.2d 551, 558 (Mo.App.E.D.1994). He suggests that the proposed testimony was not for that purpose. Rather, he contends, it was offered "for the purpose of explaining the termination of the prospective purchasers' interest in acquiring any part" of owner's property. In sustaining the objection, the trial court commented that the evidence was "either precondemnation blight or it is totally irrelevant." We agree.

Further, owner was not prejudiced by the trial court's ruling. The transcript contains 15 pages of owner's testimony concerning various individuals and companies he contacted about purchase or lease of his property. His counsel then asked the following question and he gave this answer:

Q: After June of 1988, and after you received [MHTC's June 21, 1988 letter saying it will be taking most of his property in the future], did you close on any sale within the Matula property?

A. No, I did not.

Thus, the evidence owner wanted before the jury was otherwise presented. Therefore, the offered testimony was at best cumulative. Point denied.

## VII.

In his final point, owner claims the trial court "erred in improperly permitting [MHTC] to argue to the jury in closing argument [owner's] 'net investment' in the property as it submitted to the jury an improper measure of damages."

MHTC's argument was clearly rebuttal argument. Owner offered extensive, detailed costs of the land and its improvements in his case-in-chief. In his closing argument, owner's counsel told the jury, "You've heard the money [owner has] invested," the original purchase was at a good price, and owner spent his money and time in changing the site. However, he cautioned the jury not to "make the mistake of merely equating money investigated (sic) into the property by [owner] as the same as the fair market value" and not to "look at simply what was invested in terms of time and money."

In response, MHTC commented that owner paid $758,000 for the property and "invested another $417,000." Owner objected "to the subtraction here. I don't think it has anything to do with the fair market value of the property." MHTC's counsel corrected the subtraction to $465,000. Then MHTC's counsel said that owner's counsel "says what is invested doesn't have anything to do with fair market value. Let me suggest to you that throughout [owner's] ... testimony, [owner] continuously repeated what [he] invested and value even to the point of the $1,200 for the Munchies restaurant from Texas that added value. That's what his investment is. Okay? And I'm not telling you to return that kind of verdict."

Owner opened up the subject of investment in his case-in-chief. Thus, even if the evidence was inadmissible and the argument improper, he cannot complain. *See State ex rel. Missouri Highway & Transp. Comm'n v. Cowger,* 838 S.W.2d 144, 147 (Mo. App.W.D.1992). "A party who opens up a subject is held either to be estopped from objecting to its further development or to have waived his right to object to further development." *Id.* Point denied.

The trial court's judgment is affirmed.

AHRENS, P.J., and PUDLOWSKI, J., concurs.