[Civ. No. 2686.  Third Appellate District.—April 16, 1924.]

B. J. PYE, Respondent, v. EAGLE LAKE LUMBER COMPANY, Defendant; FRANK L. SPENCER et al., Appellants.

[1] CONTRACTS—AGREEMENT TO DELIVER LUMBER—BREACH—MEASURE OF DAMAGES.—In an action for damages for breach of a contract to manufacture and deliver a specified quantity of lumber, the measure of the plaintiff's damage, if any, is the difference be-

---

1.  See 8 Cal. Jur. 820; 24 R. C. L. 69.

tween the contract price of the lumber and the price at which similar lumber to that contracted for could be purchased in the market nearest the place of delivery.

[2] ID.—"MILL RUN" LUMBER — PROOF OF VALUE.—In such action, the lumber agreed to be delivered, and which defendant admittedly failed to deliver, having been "mill run white pine lumber" board measure, plaintiff, in order to prove the value of the lumber thus described, could either produce a qualified witness who knew the forest from which the lumber was to have been cut and ask him, in terms, what was the market value of such lumber as the "mill run" would have been from defendant's mill cutting logs from this forest, or he could show what grades the mill run from defendant's mill would sort into, and the percentages of the different grades, and then prove the market values of the lumber in the different grades.

[3] ID.—BREACH — DAMAGES—UNCERTAINTY OF AMOUNT—MEASURE OF RECOVERY.—In cases where substantial damage is shown, but the amount is entirely uncertain or extremely difficult of ascertainment, the sum to be awarded is a question for the jury in the exercise of a sound discretion; and the fact that the full extent of the damages must be a matter even of speculation is not ground for refusing all damages.

[4] ID.—"MILL RUN" LUMBER—PROOF OF GRADES AND PERCENTAGES— JUDGMENT.—In this action for damages for breach of a contract to manufacture and deliver a specific quantity of "mill run white pine lumber" board measure, the evidence having shown that the lumber actually delivered had been sorted into the grades and percentages claimed by plaintiff, that the lumber cut by defendant and piled in its yard, but not delivered, would run true to these percentages, that fallen logs ready for sawing would do the same, and that the standing timber near the mill and immediately adjoining the area already cut over (and which defendant would in all probability have cut had it continued to cut and deliver the lumber contracted for) was of this standard, such evidence was sufficient to show the different grades of lumber within the "mill run," had defendant continued to operate, and to support the judgment in favor of plaintiff.

[5] ID.—RESALE OF LUMBER—ACTION FOR DAMAGES—PARTIES.—The fact that plaintiff, after entering into the contract whereby defendant agreed to manufacture and sell a certain quantity of lumber, entered into a contract with a third party whereby he (plaintiff) purported to "sell and assign" certain grades of such lumber to said third person, did not make said third party a

2.  See 10 Cal. Jur. 1021; 11 R. C. L. 574.
3.  See 8 Cal. Jur. 755.

necessary party plaintiff to the action for damages for the breach of the contract between plaintiff and defendant, where the contract between plaintiff and said third person amounted to no more than a resale of such lumber and, notwithstanding defendant's knowledge of such subsequent contract, no privity was ever established between defendant and said third party.

[6] Id. — Nonjoinder—Pleading—Waiver of Objection.—Conceding that the agreement between plaintiff and said third party was an assignment, and that they should have been made parties to the action for damages for breach of the contract between plaintiff and defendant, defendant waived its right to object on this ground by failing to plead this nonjoinder in its answer; and defendants' general denial did not amount to such a plea.

(1) 35 **Cyc.**, p. 633.    (2) 27 **Cyc.**, p. 510.    (3) 17 **C. J.**, pp. 756, 757, sec. 90; p. 1057, sec. 361; 22 **C. J.**, p. 187, sec. 148.    (4) 35 **Cyc.**, p. 632.    (5) 35 **Cyc.**, p. 623 (1926 Anno.).    (6) 31 **Cyc.**, p. 742 (1926 Anno.).

APPEAL from a judgment of the Superior Court of Sacramento County.   Charles O. Busick, Judge.   Affirmed.

The facts are stated in the opinion of the court.

Butler & Van Dyke and Arthur C. Huston for Appellants.

J. J. Lermen and Oliver Ellsworth for Respondent.

SHIELDS, J., *pro tem.*—The Eagle Lake Lumber Company was a corporation maintaining and operating a sawmill at Termo, in Lassen County, California. It owned or had under contract sixteen hundred acres of timber land which it held in connection with its mill.

On June 25, 1919, the defendant Eagle Lake Lumber Company entered into a contract with the plaintiff whereby the company was to sell to plaintiff, the respondent herein, "the first three million feet board measure of mill run white pine lumber" to be cut in the company's mill. The cutting was to begin immediately and the plaintiff was to have all of the cut continuously until the entire three million feet had been delivered, excepting that the company reserved the right to sell locally two hundred thousand feet

6.   See 2 **Cal. Jur.** 253; 2 **R. C. L.** 85.

board measure and eight hundred thousand feet board measure to make into railroad ties. This contract left the rapidity with which the lumber was to be supplied, and the time in which its delivery should be completed, indefinite, and by a later supplemental contract it was provided that not less than three-fourths of all of the cut of the mill during the period from June 25 to December 15, 1919, should be delivered to plaintiff, the respondent herein, and that during that time the entire three million feet contracted for should be delivered. The contract made no provision as to what the quality of the lumber should be, other than that it should be "three million feet board measure of mill run white pine lumber," except that it was provided that the company agreed that unless the percentage of "No. 2 shop and better" white pine lumber sold under this agreement should equal thirty-five per cent of the total, then that a readjustment of the contract price should be made on the basis of agreed prices for the different grades into which the lumber might be divided, of which the contract specified eight grades, designated as box lumber, numbers one and two shop, numbers one, two and three clear, and numbers one and two common board.

Under this contract the parties are in agreement that one million five hundred and twenty-six thousand two hundred and ten (1,526,210) feet of lumber were delivered, and that one million four hundred and seventy-three thousand seven hundred and ninety (1,473,790) feet remained undelivered. It is likewise undisputed that the conditions under which the defendant company failed to make delivery amounted to a definite breach of the contract. The defendants Coulter and Spencer were sued as stockholders of the defendant Eagle Lake Lumber Company. Judgment went against them in sums proportionate to their shares, and from this judgment these two defendants have taken this appeal.

[1] At the trial the parties were in substantial agreement that the measure of the plaintiff's damage, if any, was the difference between the contract price of the lumber, twenty-two dollars ($22) per thousand, plus a slight cost for reloading, and the price at which similar lumber to that contracted for could have been purchased in the market nearest the place of delivery, as provided for in section 3354 of the Civil Code.

Out of the efforts of plaintiff to show what the market value of the undelivered portion of the lumber was arose the differences resulting in this appeal.

[2] It will be noted that the lumber agreed to be delivered, and which defendant admittedly failed to deliver, was to have been "mill run white pine lumber" board measure. Appellants contend that the way in which to prove the market value of lumber thus described was to produce a qualified witness who knew the forest from which the lumber was to have been cut and to ask him, in terms, what was the market value of such lumber as the "mill run" would have been from defendant's mill cutting logs from this forest. Respondent insists that there is no such grade of lumber as "mill run," and that the value of the lumber contracted for should be shown, and could only be shown, by finding out what grades the mill run from defendant's mill would sort into and the percentages of the different grades and then by proving the market values of the lumber in the different grades. It would seem that either method would be correct, provided it were properly done. There is no such grade of lumber as "mill run" known to the trade in the sense in which "box lumber" or "number one clear," for example, are known. But the term as a description has a very definite meaning, and that is the lumber that comes from the mill in the ordinary process of its operation. "Mill run" of any one mill might differ from the "run" of any other mill, or a number of mills might so nearly approach each other in the character of the timber which they were sawing that their "runs" might be practically identical. The value of the "mill run" of any mill would, of course, depend upon the timber it was sawing and whether or not this timber was of a kind which would produce a large or a small percentage of the higher quality and more valuable grades of commercial lumber.

To prove the value of the "mill run" of any mill a witness could have been put on the stand, as contended for by appellants, and after showing knowledge of the lumber market, of the mill and of the forest from which it was cutting, he could have been asked the direct question as to what was the market value as of a specified date of such "mill run" as such mill and such forest would have produced, and his answer would have been competent evidence.

But that answer would have necessarily been based upon the quality of the "mill run" and the different amounts of the different commercial grades of lumber of which it was made up. On cross-examination such a witness would have to develop this knowledge in great detail or his testimony would be of no value. Respondent approached the matter from the other end. He sought to prove the different grades into which the "mill run" of this mill would sort, and the different percentages of each of these grades, and then to prove the market value of these grades in their several quantities. He contends that to prove the value of the different parts of the whole is, where the mere variety is not an element of value in itself, to prove the value of the whole. In this we think he is correct. Appellants insist that the evidence offered by respondent under this latter contention to show what the character of the "mill run" of the mill for the period it would have been cutting the lumber to supply the contract would have been was insufficient.

They contend that the defendant company had sixteen hundred acres of standing timber from which to cut; that under the contract it was not required to cut from any particular part of this timber, or for that matter that it was not even required to cut the lumber to fill the contract from their own holdings, and that no witness who did not know at least all parts of the company's sixteen-hundred acres, and what the mill run from any part of it would have been, was qualified to testify as to the kind or quality of the lumber due to plaintiff under his contract. This contention cannot be followed; it leads too far. Sixteen hundred acres is a large tract. How much of it should a witness have known before being qualified to testify in this action? It can be readily seen that much of it might not have been available as a source from which to fill this contract. If it was all in one body some of it might have been very distant and inaccessible. If it was not all in one body some parcels of it might have been wholly beyond the bounds of practicable use. Some portions of the forest might have been of inferior timber which in the exercise of good faith the defendant could not have resorted to for the purposes of this contract.

It must be recalled that defendant had but a limited time within which to cut the lumber due to plaintiff. The pressure of time might have confined defendant to the near and convenient "forties" which were examined by the witness White.

It may be contended that if any of these conditions existed that the plaintiff should have shown them as part of his case. But this is not so with reference to the other contention of appellants, that under the contract the defendant company was not even restricted in its freedom to select timber from which to supply the contract to that grown on its own land. If it was at liberty to go anywhere it saw fit for timber to saw while delivering its product to plaintiff under its contract, then no witness would be qualified to tell what the "mill run" of that mill would have been during the time when it should have been filling plaintiff's contract. This would leave plaintiff in a condition where defendants would admit the breach of their contract and say that because it was difficult for plaintiff to prove with exactness the amount of his admitted loss, that he could recover nothing. This, of course, is not the law. **[3]** In cases where substantial damage is shown where the amount is entirely uncertain or extremely difficult of ascertainment the sum to be awarded is a question for the jury in the exercise of a sound discretion. The fact that the full extent of the damages must be a matter even of speculation is not ground for refusing all damages. (17 Corpus Juris 756.) "While the actual amount of damages from the breach of a contract may not be susceptible of exact proof, the law does not permit one whose act has resulted in loss to another to escape liability on this account . . . " the law requires "only that the best evidence be adduced of which the nature of the case is capable." (*Kennett* v. *Katz Const. Co.*, 237 Mo. 279 [202 S. W. 558].)

**[4]** To the degree to which the damage in this case falls short of definiteness, it comes within the operation of this rule. It appears that the lumber which had been delivered, more than half of the amount contracted for, was of the grade claimed by the plaintiff to be due him in the undelivered portion. He contends that proof of what the "mill run" had been tended to prove what a later "mill run" would be. This claim seems reasonable. Clearly, what the

"mill run" of a mill had been while delivering over a million and a half feet of lumber is some evidence of what it would be while sawing the next one million four hundred thousand feet. In addition to this, the lumber piled in the yards and which was seen by plaintiff and the witness White was of the grade upon the basis of which plaintiff was given judgment. Logs were in the mill yard which the testimony shows would give a "mill run" as high as plaintiff claimed he was entitled to. The witness White looked over "three or four forties," being from one hundred and twenty to one hundred and sixty acres of the defendant's standing timber. This was close to the mill and immediately adjoining the land upon which the mill had operated while cutting the lumber already delivered. That the company had been cutting there and that the timber seen by the witness White was adjoining it and close to the mill affords some evidence that that was the timber which would have been cut if the defendant had continued to cut and deliver the lumber contracted for. Particularly is this true where the company had but a limited time within which to deliver the lumber, with the probability that within that time it would not have been able, while continuing to cut and deliver the lumber, to have moved its logging operations, opened up roads and done other things necessary to draw upon different or distant timber areas.

This same evidence disposes as well of the objection that the different grades of lumber within the "mill run" had not been shown. The evidence on this point was not strong; it fell far short of positive certainty and involved some element of presumption and estimate. But its weakness grew out of the nature of the breach in which defendants involved themselves. The thing to be determined was the quality of the "mill run" which a mill would have cut when it had theoretically sixteen hundred acres of timber to select from, or might have gone out and purchased stumpage over an indeterminate area. The manifest impossibility of doing this definitely necessitated resort to the less complete but practically sufficient evidence given in this case. That evidence was that the lumber already delivered had been sorted into the grades and the percentages of these grades claimed by the plaintiff; that the cut lumber in the piles would run true to these percentages, and that fallen logs ready for

sawing would do the same. This was followed by the testimony of the plaintiff that the standing timber near the mill and adjoining the area already cut over was of this standard. It would seem that such testimony should support the judgment. Some question arose in the case as to the market value of the lumber contracted to be delivered at the time of the breach and as to what was the time of the breach. Upon these questions the evidence conflicts. Under such circumstances the findings of the trial court, finding support in the evidence, will not be disturbed.

[5] A further contention of appellants, urgently insisted upon, is that plaintiff had parted with all interest in the contract sued upon in so far as it related to that portion of the "mill run" contracted for which was of the grade of number 2 shop, or better. It is claimed that this was effected through the contract of December 2, 1919, made by plaintiff and Swayne & Hoyt. (Tr., p. 139.) The matter has been argued upon the assumption that this contract amounted to a complete assignment of all of plaintiff's interest in the contract with respect to all of the "upper" grades due under it. But the instrument is not of this character. While it purports to "sell and assign" to Swayne & Hoyt all of plaintiff's rights under the contract in so far as the upper grades of lumber are concerned, it really amounts to no more than a resale of such lumber to these parties. The lumber as shipped is to be paid for by Swayne & Hoyt to plaintiff. The plaintiff is to keep the lumber covered by the contract insured. When Swayne & Hoyt wanted lumber shipped to them under this contract they were to give shipping instructions to plaintiff, not to defendants, and plaintiff was to forward such instructions to the defendant Eagle Lake Lumber Company. Notwithstanding defendants' knowledge of this contract, no privity was ever established between them and Swayne & Hoyt. Under these conditions Swayne & Hoyt were not necessary parties to this action.

[6] It would seem further that if this agreement between Swayne & Hoyt and plaintiff was an assignment, as claimed by defendants, and that thus they should have been made parties to the action, that defendants waived their right to object on this ground by failing to plead this nonjoinder in their answer. Defendants insist that their gen-

eral denial amounted to such a plea. But in *Russ* v. *Tuttle,* 158 Cal. 226 [110 Pac. 813], where the answer, among other defenses, contained a general denial, it was held that the issue of nonjoinder was not properly raised.

The judgment is affirmed.

Plummer, J., and Finch, P. J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on May 16, 1924, and a petition by appellants to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 12, 1924.

All the Justices concurred.