## ATLANTIC OIL PRODUCING CO. v. MASTERSON et al.

Circuit Court of Appeals, Fifth Circuit.
February 2, 1929.

Rehearing Denied February 25, 1929.

No. 5284.

John L. Young, of Dallas, Tex., and Jas. L. Shepherd, Jr., of Houston, Tex. (S. H. German and Baker, Botts, Parker & Garwood, all of Houston, Tex., on the brief), for appellant.

Walter F. Brown, of Houston, Tex., for appellees.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

BRYAN, Circuit Judge. Appellant complains of a judgment, based upon a directed verdict, for nominal damages only, in an action which it brought to recover, as damages for breach of contract, the cost of drilling two oil wells.

On February 6, 1923, appellant was the owner of an oil and gas lease of 30 acres of land which would terminate, unless the drilling of an oil well should be begun on or before April 9, 1924. On the first date above mentioned, appellant made an assignment to appellees of its interest in 10 acres of the land covered by the lease, and in consideration for that assignment appellees agreed to begin the drilling of a well on the 10 acres assigned to them within 30 days after the completion or abandonment of a well on adjoining land, "and to drill on the tract herein assigned to a depth of not less than 3500 feet unless oil is produced at a lesser depth." Appellees further agreed "that if oil is not discovered in paying quantities in the first well drilled on the land herein assigned, that (they) will begin the drilling of another well within 60 days from the date of the abandonment of the first well," and that they would pay to appellant $2,000 out of, but only out of, the proceeds of oil produced from their lease. If oil should not be produced in paying quantities, appellees were given the right to drill additional wells, but upon their failure to exercise that right within 60 days from the abandonment of any well, it was provided that their lease should terminate. Appellees drilled a well on the adjoining and, but it turned out to be a dry hole; and they failed to drill any well on the land covered by their lease. Appellant, in order to prevent its lease from terminating, was obliged to begin the drilling of a test well prior to April 9, 1924, and this well also failed to produce oil, but it cost $30,000 to drill it to a depth of 3,500 feet. However, it was located on the 20 acres retained by appellant, and not on the 10 acres covered by appellant's assignment to appellees.

The contract sued on it what is called a "dry hole" or information contract. It is a type of contract, quite common in the business of oil production, under which one who drills a test well on a lease in which he is interested receives contributions either in money or acreage from owners of adjoining lands or leases; the object of the contributors being to secure the benefit of information to be derived from the drilling of a test well near their own holdings. Where one drills a well on the land of another for an interest in the lease in the event oil is produced, the object of the owner is to have his lease tested for oil without expense to himself. In this case no evidence was offered as to the value of the leasehold in-

terest assigned to appellees. Appellant's geologist testified that the drilling of the test wells contracted for to a depth of 3,500 feet would not have furnished a test for oil, but, at the most, would have given information as to the gradual dip of the salt dome in the oil field. That witness further testified that information derived from drilling of the wells contracted for would not have added materially to the information which he already had. Appellant did not undertake to prove the value of the leasehold interest assigned to appellees, or the value of any information concerning the contour of the salt dome; but relied solely on the proposition that it was entitled to recover the cost of drilling.

 "Damages recoverable for breach of contract are such as may fairly and reasonably be considered as arising naturally—that is, according to the usual course of things—from the breach of the contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract, as the probable result of the breach of it." 8 R. C. L. 455. Where, under a contract of this kind, a well is required to be drilled upon land in which the plaintiff has an interest, it may reasonably be supposed, that the parties to the contract had in contemplation the cost of drilling, and it was so held by this court in All-American Oil & Gas Co. v. Connellee, 3 F.(2d) 107. A number of other cases cited by appellant are to the same effect. We are of opinion that a different rule prevails as to the measure of damages where it appears that the plaintiff has no interest in the land, for in such a case he could derive no direct benefit from a performance of the contract, and the well, if it had been drilled, and any oil produced therefrom would have belonged wholly to appellees, Chamberlain v. Parker, 45 N. Y. 569; though it is held otherwise in Okmulgee Producing & Refining Co. v. Baugh, 111 Okl. 203, 239 P. 900. It cannot reasonably be supposed that the parties contemplated the drilling of a well on appellant's 20 acres at the expense of appellees, for in that event appellant would have been the sole owner of the well as well as of any oil that might have been produced therefrom. It may be that appellant, if it had drilled either of the wells that appellees agreed, but failed, to drill, could have recovered the cost thereof; but that question is not now presented for consideration. Appellant failed to get the information it contracted for, and it would seem to follow that the damage it sustained was the value of that information.

If under an information contract, such as this is, one contributing owner of an adjoining lease could recover the cost of drilling the test well, every other such contributing owner could do the same. The rather startling result would be that the driller of the test well would be liable to each contributor for the full cost of drilling. It cannot reasonably be supposed that so great a liability is in the contemplation of. parties to a contract of this kind. Inasmuch as appellant failed or declined to prove that any recoverable damage was sustained by the failure of appellees to perform their contract, the trial court did not err in directing a verdict for nominal damages.

The judgment is affirmed.