## HOFFER OIL CORPORATION v. CARPENTER. *

Circuit Court of Appeals, Tenth Circuit.
September 11, 1929.

No. 62.

*Rehearing denied October 28, 1929.

590

H. A. Turner, of Fort Worth, Tex., for appellant.

Stephen A. George, of Ardmore, Okl., for appellee.

Before LEWIS, PHILLIPS, and Mc-DERMOTT, Circuit Judges.

PHILLIPS, Circuit Judge. T. L. Carpenter brought this action against the Hoffer Oil Corporation to recover damages for alleged breach of contract.

The contract provided that Carpenter should assign oil and gas leases on 800 acres of land to the Oil Corporation; that the Oil Corporation should pay Carpenter $2,800 in cash and should commence the drilling of a well for oil and gas on or before May 17, 1925, at a designated location on the land covered by such leases, and continue such drilling, with due diligence and in a good and workmanlike manner, until such well reached a depth of 1,600 feet, unless oil or gas were found and produced in paying quantities at a lesser depth. It further provided that Carpenter "or his assigns owning any of the surrounding acreage" should "at all times have access to the log of said well," and should "be given full information as to developments and progress on said well at any time on open request."

The action was commenced in the district court of Carter county, Oklahoma, and was removed to the federal court on the ground of diversity of citizenship. In his petition, Carpenter alleged that the parties entered into such contract; that he executed and delivered proper assignments of such leases to the Oil Corporation; that the Oil Corporation paid him $2,800 in cash, as provided in the contract, and commenced the drilling of the test well, and drilled the same to a depth of approximately 689 feet, and then, without justifiable excuse, neglected, failed, and refused to complete such well and to drill the same to a total depth of 1,600 feet; and that neither oil nor gas was found or produced in paying quantities in such well, within the depth it was drilled.

Carpenter further alleged, in his petition, that, in addition to the leases which he assigned and transferred to the Oil Corporation, he owned other leases covering approximately 400 acres in the vicinity of such test well, a large portion of which were in close proximity thereto, and that the drilling of such test well, to the depth required by such contract, was of great value to him in that it would determine whether the acreage retained by him was likely to be productive of oil or gas and whether it probably could be developed with profit.

Carpenter further alleged, in his petition, that, as a direct and proximate result of the breach of such contract by the Oil Corporation, he suffered general damages in the sum of $7,200.

The answer of the Oil Corporation was a general denial. The bill of exceptions does not include the evidence adduced in the trial court. The parties entered into a written stipulation waiving trial by jury and the cause was tried to the court. The court found the issues in favor of Carpenter, and assessed his damages in the sum of $3,000, and entered judgment accordingly. This is an appeal therefrom.

The assignments of error present the proposition that the allegations of the petition will not support a judgment other than for nominal damages, and that therefore the court erred in rendering judgment for damages in the amount of $3,000. Counsel for the Oil Corporation contend:

First. That no benefit would have accrued to Carpenter as a direct, natural, and proximate consequence of the drilling of such test well, and that therefore no general damages can be recovered on account of the

failure of the Oil Corporation to drill such test well.

Second. That the completion of such test well might have disclosed oil and gas in paying quantities or might have resulted in a dry hole, and therefore the benefits to be derived from the completion of such well were too uncertain and speculative to afford any basis for the recovery of damages.

It is an every-day transaction, in undeveloped oil fields, for the owners of oil and gas leases, who desire to have the structure, in the locality where such leases are located, tested by the drilling of a test well, and who desire to avoid the cash out-lay of the cost of drilling such a well, to assign a portion of such leases to another—usually an oil company—in consideration of an agreement with the assignee, within a certain time, to drill a test well to a certain depth upon that portion of the acreage covered by the leases assigned, and to furnish the geological facts and information disclosed thereby.

Such was the transaction in the instant case. The last paragraph of the contract recited that the plaintiff was the owner of surrounding acreage, and provided that the plaintiff or his assignee should have access to the log of the well, and should receive full information concerning such well during the drilling thereof. Such a contract is designated as a "dry hole" or information contract, in the oil fields. Atlantic Oil Producing Co. v. Masterson (C. C. A. 5) 30 F.(2d) 481.

The courts are not in agreement as to the measure of damages for the breach of such a contract. In the case of Henry Oil Co. v. Head (Tex. Civ. App.) 163 S. W. 311, the court held that the measure of damages was the reasonable value of the leases assigned. We cannot agree with this conclusion. It runs counter to a fundamental concept of the law of damages, namely, that they are awarded as compensation for the injury suffered, and not to restore the consideration paid. Standard Oil Co. v. So. Pac. Co., 268 U. S. 146, 155, 45 S. Ct. 465, 69 L. Ed. 890; Commercial Inv. Co. v. Nat'l Bank of Commerce, 36 Wash. 287, 78 P. 910, 912; Burruss v. Hines, 94 Va. 413, 416, 26 S. W. 875; 17 C. J. 727, § 68. The consideration paid is not the measure of damages for breach of a covenant, but the value of the benefit contracted for, be it greater or less than the consideration paid. Commercial Inv. Co. v. Nat'l Bank of Commerce, supra; Sedgwick on Damages (8th Ed.) vol. 2, p. 255; 17 C. J. p. 851.

The Oklahoma Supreme Court has held that the measure of damages for breach of such a contract is the cost of drilling the well. Eysenbach v. Cardinal Pet. Co., 110 Okl. 12, 236 P. 10; Okmulgee P. & R. Co. v. Baugh, 111 Okl. 203, 239 P. 900. The cost of drilling the well is not, in our opinion, the true measure of damages. Carpenter had no interest in the land upon which the oil well was to be drilled. The well, when completed, and the oil, if any, produced therefrom, would have belonged wholly to the Oil Corporation. Because of these facts, Carpenter would have received no direct benefit from the well itself, as distinguished from the information which the drilling of the well would have disclosed. Atlantic Oil Pro. Co. v. Masterson, supra, page 482 of 30 F.(2d); Chamberlain v. Parker, 45 N. Y. 569. Carpenter did not pay, and the parties did not intend that he should pay, an amount equal to the cost of drilling the well. He contributed a portion of the cost of the well, and in return therefor the Oil Corporation agreed to obtain geological facts and information by drilling the well, and to furnish the same to Carpenter. If he were compensated in damages to the extent of the full cost of the well, it would give him the equivalent of an oil well on his own land, from which he would receive the benefit of the service for which he contracted, and, in addition, the oil well itself and any oil and gas that might be produced therefrom. Therefore the cost of the well exceeds the value of the benefits for which Carpenter contracted.

The Oil Corporation agreed to furnish Carpenter the log of the well and certain geological facts and information which would be obtained by the drilling of the well. Such were the benefits for which Carpenter contracted. As a direct and proximate result of the breach of the contract, Carpenter failed to receive such facts and information. It is our conclusion that the value of the service to be rendered to Carpenter is the true measure of the general damages suffered by him. Such was the holding in Atlantic Oil Pro. Co. v. Masterson, supra, page 482 of 30 F.(2d).

Such information was of substantial value to Carpenter, who owned leases on land adjacent to the leases upon which the well was contracted to be drilled. That the drilling of the well might have produced a dry hole and afforded unfavorable geological information does not, as contended by counsel for the Oil Corporation, render the damages, resulting from the failure to furnish such information, so speculative and uncertain as to prevent recovery. Contracts for such in-

formation are always made prospectively. Persons situated as was Carpenter in the present case realize that such information may indicate their land will produce oil and gas in paying quantities or it may indicate otherwise. Nevertheless they are willing to pay a substantial consideration therefor, because it is of benefit to such persons to make reasonably certain that which is uncertain, in order that they may act prudently in future expenditures in the development of their land for oil and gas. Such geological information, whether favorable or unfavorable, would have been of value to Carpenter as the owner of the leases on such adjacent land. If unfavorable, it would have aided him in determining whether he should expend more money in the development of his leases. If sufficiently favorable to warrant drilling on Carpenter's own leases, the log of the well would have decreased the cost of drilling, because of the knowledge of the structure to be encountered. In the development of unproven oil land, well-managed oil companies employ high-salaried and competent geologists to make investigations and give their reports and opinions based thereon. Likewise, oil operators constantly make contracts, such as the contract in the instant case, by which they contribute, in cash or valuable leases, a portion of the cost of a test well in return for a log of such well and the information which such test discloses. These facts compel the conclusion that such information has a substantial value.

The question remains: How are the damages to be ascertained? The difficulty of ascertaining the value of the services to be rendered, in terms of money, does not render the damages so speculative and uncertain as to preclude recovery. The general rule is that, where the cause and existence of damages has been established with requisite certainty, recovery will not be denied because such damages are difficult of ascertainment. Calkins v. F. W. Woolworth Co. (C. C. A. 8) 27 F.(2d) 314, 320; Crichfield v. Julia (C. C. A. 2) 147 F. 65, 70, 71; Rule v. McGregor, 117 Iowa, 419, 90 N. W. 811, 812; Taylor v. Bradley, 4 Abb. Dec. (N. Y.) 363, 366; Wakeman v. Wheeler & Wilson Mfg. Co., 101 N. Y. 205, 4 N. E. 264, 266, 54 Am. Rep. 676; Bredemeier v. Pacific Supply Co., 64 Or. 576, 131 P. 312, 313; Westesen v. Olathe State Bank, 75 Colo. 340, 225 P. 837, 839; Bluegrass Cordage Co. v. Luthy, 98 Ky. 583, 33 S. W. 835, 837; American S. & R. Co. v. Riverside D. & S. Farm (C. C. A. 8) 236 F. 510, 515; Hetzel v. B. & O. R. Co., 169 U. S. 26, 37, 18 S. Ct. 255, 42

L. Ed. 648; United States Trust Co. v. O'Brien, 143 N. Y. 284, 287, 289, 38 N. E. 266, 267; Straus v. Victor Talking M. Co. (C. C. A.) 297 F. 791, 802; City of Bridgeport v. Ætna Indemnity Co., 91 Conn. 197, 99 A. 566, 568, 569; Swift & Co. v. Redhead, 147 Iowa, 94, 122 N. W. 140, 143; Black v. Hogsett, 145 Ark. 178, 224 S. W. 439, 440; Stern Co. v. Friedman, 229 Mich. 623, 201 N. W. 961, 963.

In Straus v. Victor Talking M. Co., supra, page 802 of 297 F., the court said: "The constant tendency of the courts is to find some way in which damages can be awarded where a wrong has been done. Difficulty of ascertainment is no longer confused with right of recovery."

In Wakeman v. W. & W. M. Co., supra, the court said: "But when it is certain that damages have been caused by a breach of contract, and the only uncertainty is as to their amount, there can rarely be good reason for refusing, on account of such uncertainty, any damages whatever for the breach. A person violating his contract should not be permitted entirely to escape liability because the amount of the damages which he has caused is uncertain."

A person who has violated his contract will not be permitted to reap advantage from his own wrong, by insisting upon proof which, by reason of his breach, cannot be furnished. Shoemaker v. Acker, 116 Cal. 239, 48 P. 62, 64; Northern Light Min. Co. v. Blue Goose M. Co., 25 Cal. App. 282, 143 P. 540, 545; South Chester Tube Co. v. Texhoma O. & R. Co. (Tex. Civ. App.) 264 S. W. 108, 111; Eastman Kodak Co. v. Southern Photo Material Co. (C. C. A.) 295 F. 98, 102.

A party, who has broken his contract, will not be permitted to escape liability because of the lack of a perfect measure of the damages caused by his breach. Shoemaker v. Acker, supra, 116 Cal. 239, page 64 of 48 P.; Pye v. Eagle Lake Lumber Co., 66 Cal. App. 584, 227 P. 193, 195; Kennett v. Katz Const. Co., 273 Mo. 279, 202 S. W. 558, 562; Prejean v. Dela.-La. Fur-Trap. Co. (C. C. A.) 13 F.(2d) 71, 73; Manss-Owens Co. v. Owens & Son, 129 Va. 183, 105 S. E. 543, 549.

A reasonable basis for computation, and the best evidence which is obtainable under the circumstances of the case and which will enable the jury to arrive at an approximate estimate of the loss, is sufficient. Prejean v. Fur-Trap. Co., supra, page 73 of 13 F. (2d); Eastman Kodak Co. v. Southern Photo M. Co., supra, page 102 of 295 F.;

Kennett v. Katz, supra, 273 Mo. 279, page 562 of 202 S. W.; Chester Tube Co. v. Oil & Ref. Co., supra, page 111 of 264 S. W.; Osterling v. Frick, 284 Pa. 397, 131 A. 250, 251, 252; Johnston v. City of Galva, 316 Ill. 598, 147 N. E. 453, 455, 38 A. L. R. 1384; Manss-Owens Co. v. H. S. Owens & Son, supra, 129 Va. 183, pages 549, 550 of 105 S. E.; Calkins v. Woolworth, supra, page 320 of 27 F.(2d). In such a case, the amount may be fixed by the jury, in the exercise of sound discretion, under proper instructions from the court. Pye v. Eagle Lake L. Co., supra, 66 Cal. App. 584, page 195 of 227 P.; Manss-Owens Co. v. Owens & Son, supra, 129 Va. 183, 549, 550 of 105 S. E.; Prejean v. Fur-Trap. Co., supra, pages 72, 73, of 13 F.(2d).

In Manss-Owens Co. v. Owens & Son, supra, the court said: "The violator of his contract should not be allowed to escape all liability simply because the precise amount of the damages for which he is responsible is uncertain. Nearly all commercial contracts are entered into in contemplation of future profits. As such profits are prospective, they must be uncertain and problematical; but the person injured is not to be deprived of all remedy. He has the right to prove the nature of his contract, the circumstances surrounding and following its breach, and the consequences naturally and directly traceable thereto; and it is for the jury, under proper instructions, to determine the compensation to be awarded for the breach. That compensation should be the value of the contract."

It is, of course, impossible to determine what facts and geological information the drilling of the oil well would have disclosed, and whether the information would have indicated that the land, on which Carpenter's leases were located, would produce oil in paying quantities. We have demonstrated, we believe, that such information, in any event, would have been valuable to Carpenter. Furthermore, as stated above, contracts for such information are always made prospectively.

The information can be obtained only by drilling, and such drilling costs substantially the same amount, whether the result is production of oil or gas in paying quantities or a "dry hole." Therefore the damages must be based upon the value of the services rendered in obtaining the information, and not upon the value of the information after it is obtained. It is the value of the services in obtaining and furnishing the information, and not the value of the information furnished.

When a geologist is employed to investigate a tract of land as to its oil and gas bearing potentialities, and to report the results of such investigation, such report may be favorable or it may be adverse. The value of the geologist's services, in such a case, is not measured by the value of the results of his investigation, but by the usual and customary charge for such services. Likewise, in the instant case, the value of the services, agreed to be rendered in obtaining and furnishing the geological information, must be measured by what persons similarly situated usually and ordinarily pay therefor, and not upon the value of the information after it is obtained.

We conclude that the value of such services is what a reasonable person owning land adjacent to the lands on which another proposes to drill such a test well, similarly situated and of similar oil-bearing potentialities as the land of the parties in the instant case, would ordinarily pay by way of contribution to the cost of such test well for the log of such well and the geological information which the drilling thereof would disclose. While a witness should not be permitted to speculate or conjecture as to possible or probable damages, still the best evidence obtainable, under the circumstances, is receivable, and this is often nothing better than the opinion of well-informed persons. Daughetee v. Ohio Oil Co., 263 Ill. 518, 105 N. E. 308, 311.

The contract being a usual one in the oil fields, we think evidence could be produced, in all probability, which would show what, under similar circumstances, is ordinarily and usually paid for such services. This, we think, would afford a reasonable basis for computation, and would furnish sufficient data for an approximate estimate of the value of such services. It would, of course, be something less than the full cost of drilling the well, because with the full amount the contributor could drill a well on his own land.

Having concluded that the breach of the contract, in the instant case, resulted in substantial damages to Carpenter, and that such damages could be ascertained with approximate accuracy, we must assume, in the absence of a bill of exceptions disclosing the evidence adduced, that the proof was sufficient, and the judgment is therefore affirmed, with costs.