[Civ. No. 15941. First Dist., Div. One. June 30, 1954.]

M. ALLEN, Plaintiff, v. MERVIN L. GARDNER, Respondent; E. K. FERGUSON, JR., as Administrator etc., et al., Appellants.

Murle C. Shreck and E. R. Vaughn for Appellants.

Royal A. Stewart, Richard W. Horton, Worthington, Park & Worthington and Herbert C. Kohlwes for Respondent.

PETERS, P. J.—Mervin L. Gardner was awarded the principal contract to construct a school. The contract, among other things, required Gardner to furnish a specified quantity of specially designed concrete. This portion of the contract was subcontracted to the Fergusons, who agreed with Gardner to furnish the required concrete at $15.50 per cubic yard. After supplying a small quantity of the concrete, for which they were not fully paid, the Fergusons wrongfully breached

their contract, and refused to continue performance. Gardner was required to and did furnish the balance of the concrete required on the job. The trial court found that this concrete cost Gardner $43.02 a cubic yard. Damages were awarded to Gardner based on the difference between $15.50 per cubic yard, the price at which the Fergusons had agreed to furnish the concrete, and $43.02 per cubic yard, the cost to Gardner of the balance of the concrete. The Fergusons were adjudged entitled to an offset for the amount still owing them. So reduced, Gardner's net damage was fixed at $54,237.87, and judgment entered in his favor for that amount. The Fergusons appeal from that judgment and from the order denying their motion for a new trial.* Appellants do not challenge the findings that they wrongfully breached the contract causing damage to Gardner, but direct their attack solely against the sufficiency of the evidence to sustain the findings as to the precise amount of damage.

The facts, more in detail, follow: Gardner, the cross-complainant, is a licensed contractor. He had a contract to construct a school for the Tahoe-Truckee Joint Unified School District. This contract required him to furnish 2,450 cubic yards of specially designed concrete. In May of 1950 the cross-defendants, collectively referred to herein as the Fergusons, contracted with Gardner to mix, prepare, furnish and deliver at the job site, all of the concrete called for by the main contract. The subcontract provided for a price of $15.50 per cubic yard, based on an estimate of six sacks of cement per cubic yard, with adjustments upward or downward dependent upon whether more or less cement was in fact required.

The Fergusons started performance under the contract, and supplied 374.75 cubic yards of concrete, but in October of 1950 they wrongfully breached the contract, and refused further performance. Gardner, thereupon, furnished the balance of the concrete. The court has found that he furnished 2,075.25 cubic yards of concrete, of which 1,147.65 cubic yards were poured under his direct supervision, and 927.6 cubic yards were poured by Lee H. Rovzar, a civil engineer, hired by Gardner for this purpose. Gardner kept no detailed records of the cost of the concrete poured by him, but Rovzar kept detailed records, which showed a total cost of $43.02

*This is a nonappealable order. The appeal therefrom should be dismissed.

per cubic yard for the concrete poured by him. Gardner testified that his costs were the same as Rovzar's. The trial court accepted this figure as the cost to Gardner of the 2,075.25 cubic yards furnished by him, either directly or through Rovzar.

Gardner had not fully paid the Fergusons for the 374.75 cubic yards of concrete furnished by them, and refused to do so. Thereupon, the Fergusons, through an assignee, brought this action against Gardner for the balance owed to them. Gardner answered and cross-complained against the Fergusons to recover the damages incurred by the Fergusons' breach of contract.

The causes were tried before the court without a jury. The court held that Gardner was entitled to damages against the Fergusons for the difference between the contract price of $15.50 per cubic yard, and the cost to Gardner of furnishing the concrete, fixed by the trial court at $43.02 per cubic yard, on 2,075.25 cubic yards. Thus, Gardner's total damages were fixed at $57,110.88. The trial court also held that Gardner owed the Fergusons $2,873.01 for part of the concrete furnished by the Fergusons, which sum was offset against the claims of Gardner. So computed, the net damages to Gardner were fixed at $54,237.87. Judgment was entered against the Fergusons in this amount. It is from this judgment that the Fergusons appeal.

Appellants attack only the findings relating to the amount of damages found, contending that these findings are unsupported. As pointed out above, Rovzar's cost computations were used to compute Gardner's damages. Appellants attack practically every major and some minor items contained in those computations. Their basic contention is that Gardner failed to prove the amount of his damages with the certainty required by law. They also contend that, even if Rovzar's computations be accepted as to the 927.6 cubic yards of concrete poured by him, it was error to use those figures as the cost of the 1,147.65 cubic yards of concrete poured by Gardner. They also attack the finding that Gardner poured 1,147.65 cubic yards of concrete.

Most of these attacks of appellants relate to the method of proof used by Gardner to establish his damages. He produced Rovzar as his witness, who testified that his cost for the concrete poured by him was $43.02 per cubic yard. Rovzar supported this figure with detailed records of his costs. These

records, of course, referred only to the 927.6 cubic yards of concrete that he poured. Gardner, who had kept no records of the cost of the 1,147.65 cubic yards poured by him, testified that his costs were the same as those of Rovzar, that there was no difference in his labor costs, the cost of cement or aggregates, the cost of pouring, etc., and those of Rovzar. Gardner also testified that the school architect, during the course of the construction, ordered additional concrete work, and that for this supplementary concrete the school district was charged and paid $43.02 per cubic yard. The Fergusons contend that this was not a proper or sufficient way to prove damages insofar as the concrete directly poured by Gardner is concerned. In the absence of direct evidence of costs incurred by Gardner it is urged that there was a failure of proof on the issue.

Appellants have misconceived the law applicable to this situation. They stand before the court as violators of their contract. Their acts caused damage, serious damage, to Gardner. Those facts were proved definitely and with certainty. The law requires, and properly so, that the fact of damage be proved with reasonable certainty. (Civ. Code, § 3301.) ■ Uncertainty as to the fact of damage, that is, as to the nature, existence or cause of the damage, is fatal. But the same certainty as to the amount of the damage is not required. ■ An innocent party damaged by the acts of a contract violator will not be denied recovery simply because precise proof of the amount of damage is not available. The law only requires that some reasonable basis of computation be used, and will allow damages so computed even if the result reached is only an approximation. (See annotation commenting on cases from many states, 78 A.L.R. 858.)

These rules have frequently been applied in California. In *Speegle* v. *Board of Fire Underwriters,* 29 Cal.2d 34, 46 [172 P.2d 867], the California Supreme Court quoted the following with approval from *Bigelow* v. *RKO Radio Pictures, Inc.,* 327 U.S. 251 [90 L.Ed. 652, 60 S.Ct. 574] : " 'The most elementary conceptions of justice and public policy require that the wrongdoer shall bear the risk of the uncertainty which his own wrong has created. . . . That principle is an ancient one. . . .' " In *Stott* v. *Johnston,* 36 Cal.2d 864, 875 [229 P.2d 348, 28 A.L.R.2d 580], it is stated: "In this regard it appears to be the general rule that while a plaintiff must show with reasonable certainty that he has suffered

damages by reason of the wrongful act of defendant, once the cause and existence of damages have been so established, recovery will not be denied because the damages are difficult of ascertainment. . . .

". . . the defendant whose wrongful act gave rise to the injury will not be heard to complain that the amount thereof cannot be determined with mathematical precision." In *Long Beach Drug Co.* v. *United Drug Co.*, 13 Cal.2d 158, 174 [88 P.2d 698, 89 P.2d 386], the court declared: "The fact that the amount of damage may not be susceptible of exact proof or may be uncertain, contingent, or difficult of ascertainment does not bar the recovery." In *Noble* v. *Tweedy*, 90 Cal.App.2d 738 [203 P.2d 778], these rules were again applied. There the court stated that once the fact of damage is shown with reasonable certainty "the fact that the amount thereof may be difficult of exact admeasurement, or subject to various possible contingencies, does not bar a recovery." (P. 745.) At page 746 the court declared: "As long as there is available a satisfactory method for obtaining a reasonably proximate estimation of the damages, the defendant whose wrongful act gave rise to the injury will not be heard to complain that the amount thereof cannot be determined with mathematical precision. [Citing cases.] The method in the present case was practicable and fair, and the amount of damages assessed was as reasonably accurate as the circumstances would permit." In *Hacker etc. Co.* v. *Chapman V. Mfg. Co.*, 17 Cal.App.2d 265, 271 [61 P.2d 944], the same rule is stated as follows: "The fact that the exact amount of damage could not be determined does not defeat plaintiff's right to recover. . . . The law does not require absolute certainty in fixing damages although it does require as much certainty as possible under the proof which is available. Oftentimes it is necessary that the amount be left to the discretion of the court or jury." In *Pye* v. *Eagle Lake Lbr. Co.*, 66 Cal.App. 584, 590 [227 P. 193], the court declared: "This would leave plaintiff in a condition where defendants would admit the breach of their contract and say that because it was difficult for plaintiff to prove with exactness the amount of his admitted loss, that he could recover nothing. This, of course, is not the law. In cases where substantial damage is shown where the amount is entirely uncertain or extremely difficult of ascertainment the sum to be awarded is a question for the jury in the exercise of a sound discretion.

The fact that the full extent of the damages must be a matter even of speculation is not ground for refusing all damages. (17 Corpus Juris 756.) 'While the actual amount of damages from the breach of a contract may not be susceptible of exact proof, the law does not permit one whose act has resulted in loss to another to escape liability on this account . . .' the law requires 'only that the best evidence be adduced of which the nature of the case is capable.' (*Kennett* v. *Katz Const. Co.*, 237 Mo. 279 [202 S.W. 558].)" (See also *Jegen* v. *Berger*, 77 Cal.App.2d 1, 15 [174 P.2d 489]; *Natural Soda Prod. Co.* v. *City of Los Angeles*, 23 Cal.2d 193, 199 [143 P.2d 12]; *Monroe* v. *Owens*, 76 Cal.App.2d 23, 29 [172 P.2d 110]; *Arques* v. *National Superior Co.*, 67 Cal.App.2d 763, 779 [155 P.2d 643].)

■ Tested by these standards the method used by the trial court was a proper one. It used the proper measure of damages. Section 3300 of the Civil Code provides that, unless otherwise expressly provided by law, the measure of damages for breach of contract "is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom." Obviously, the damage caused by the breach was the difference between the contract price and what Gardner had to pay, the measure adopted by the trial court. ■ But appellants urge that section 3354 of the Civil Code expressly provides a different measure of damages. That section provides that in estimating damages in favor of a buyer the value to the buyer "is deemed to be the price at which he might have bought an equivalent thing in the market nearest to the place where the property ought to have been put into his possession. . . ." Thus, in cases where this section is applicable, the amount actually paid to secure the article is not the proper measure. Appellants contend that this section here applies, and that respondent must fail because of his failure to offer evidence of the market value of the concrete involved. It is doubtful if this section is applicable to a contract for the supplying of specially designed concrete which could not be purchased ready-made in any existing market, but even if it were applicable there was evidence of the market value of the product. The school district paid Gardner $43.02 per cubic yard for the extra concrete ordered by it. That is some evidence, sufficient evidence, upon which to conclude that that was the market value of

the concrete in the area involved. Certainly, it will not be presumed, in the absence of evidence to the contrary, that the school district paid more than the market price.

So far as using Rovzar's computations as a basis for Gardner's costs is concerned, the evidence was the best available. Of course, it would have been more satisfactory had Gardner kept complete records of his costs. But he did not. Rovzar did. He testified that the concrete poured by him cost $43.02 per cubic yard. He supported this with itemized figures. Ample opportunity to challenge the items set forth in these records was afforded appellants. Gardner testified that his costs were the same. Under the circumstances this was a reasonable and satisfactory method of estimating the damages, under the rules of the cases above set forth.

Appellants point out that Gardner claims to have furnished, and the trial court found that he did furnish, 1,147.65 cubic yards of concrete before hiring Rovzar to complete the contract, and contend that this finding is unsupported. They argue that Gardner must have furnished this concrete during the winter months, and that it is incredible that he could have poured this quantity of concrete during the period in question. The finding of the trial court is that 2,075.25 cubic yards of concrete were mixed and poured after the breach. There is positive evidence that Rovzar poured 927.6 cubic yards of this quantity. Gardner directly testified, when asked if, after the breach, he had completed the contract, that: "We furnished the balance of the concrete in the amount of 2,075 and a quarter yards needed to finish the contract." There was also evidence that a substantial quantity of concrete had been supplied by Gardner to the school district in excess of the 2,450 cubic yards called for by the main contract. Under the evidence, the excess over what Rovzar furnished must have been supplied by Gardner. The appellate court must accept this evidence as supporting the challenged finding. Any conflict in the evidence on this and the other issues was resolved by the trial court. Thus, had no other evidence been offered beyond what is above summarized, the award would be amply supported.

Appellants do make a detailed attack on several of the items testified to by Rovzar as having been included by him in arriving at the figure of $43.02, and contend that over $29,000 of the $54,000 plus judgment is excessive.

Rovzar presented detailed records and work sheets of his

total costs for pouring 927.6 cubic yards of concrete. The breakdown of these costs as testified to by him is as follows:

$11,545.28—for labor, a cubic yard cost of ...........$12.44
  5,160.40—for equipment, rentals, a cubic yard cost of  5.57
10,187.75—for cement, a cubic yard cost of.......... 10.98
  7,737.78—for aggregates (sand and gravel), a cubic
          yard cost of ......................·............. 8.34

$34,631.21 subtotal of actual costs.
  5,277.80 for overhead, computed as 15.24 per cent of
         the cost of all materials shown in the sub-
         total, or a per cubic yard cost of........... 5.69

$39,909.01 total cost for 927.6 cubic yards, a cubic yard
         cost of ..............................$43.02

These same unit costs were projected into the item costs for Gardner, resulting in the judgment already described.

Appellants object to the allowance of any amount for overhead, claiming that there was no evidence that respondent's overhead increased by reason of the breach, and that there was no proof that such overhead amounted to 15.24 per cent of the other costs. Particularly is the claim made that there was no evidence to justify the allowance for increased overhead expenses during the period Gardner was pouring the concrete.

Of course, if there was no evidence of increased overhead caused by the breach it would have been error to allow any damages for this item. (*Oakland Cal. Towel Co.* v. *Sivils,* 52 Cal.App.2d 517, 520 [126 P.2d 651].) But there was such evidence. Obviously, the breach of the contract by the Fergusons adversely affected the contract of the prime contractor responsible for the entire project, by increasing his duties and responsibilities, and consuming the time of Gardner and his staff in performing the work the Fergusons had contracted to perform. In particular, Gardner testified that he had a most difficult time after the breach to locate adequate quantities of cement to complete the contract, and in locating a contractor. Much of his time and that of his staff was consumed in these tasks. Rovzar testified that, because of the breach, overhead of the respondent was increased because company time was consumed that otherwise would not have been consumed in finding and ordering materials, keeping records, in expediting the materials, and in paying for these materials. None of these costs would have accrued had appellants not breached the contract. One way to secure a rough

estimate of the proportionate cost of the overhead caused by the breach would be to determine what proportion of the total business of Gardner was represented by the concrete job, and to allocate that proportion of the total overhead expenses as applicable to the concrete job. This is precisely what was done. There was evidence that the concrete job constituted 15.24 per cent of the total business Gardner performed during this period. Rovzar testified that the books of the Gardner firm were audited semiannually, and that such audit showed that 15.24 per cent of the main office expense was "chargeable to that operation," that 15.24 per cent was the "exact ratio between all operations," that is, the "Exact determination of the expense as applied to all operations, whether concrete, carpentry work, steel work or other trade or subcontractors," during the period he was pouring concrete. Obviously, if this was a proper charge during that period, under the rules already discussed it was proper to estimate the overhead expense during the Gardner period at the same ratio. The inclusion of this item by the trial court, and the method used in proving it, were proper.

There is also an attack made on the cost of the aggregates, that is, the sand and gravel. Rovzar fixed his total cost for aggregates at $7,737.78 to make 927.6 cubic yards of concrete. Material requisitions introduced into evidence show that the average cost of aggregates was $5.00 per cubic yard, a reasonable price. But appellants claim, by analyzing the figures, that the trial court must have allowed $5.70 per cubic yard for such aggregates in its award. Respondents explain this apparent overcharge by pointing out that the exhibit introduced erroneously totals the requisitions for the aggregates furnished, showing 1,059.42 cubic yards, but that correct addition would show the proper figure to be 1,586.82 cubic yards. The actual costs were properly added and show the figure $7,737.78. This brings the cost of the aggregates down to a figure well within the figure allowed by the trial court and within the evidence. There is no error in the allowance made by the trial court for this item.

The appellants next attack the item for the cost of cement, fixed by Rovzar at $10.98 per cubic yard, or $1.80 per sack, figuring 6.09 sacks to a cubic yard, the quantity testified to by Rovzar. Material requisitions introduced into evidence for these purchases support this quantity and price. Rovzar testified that this cement was purchased from the Gardner Supply Company, and that the cement was charged for "on

a market value plus sales tax, the existing cost at that time based on commercial cement available at that time . . . at Truckee and Reno and various places." Rovzar went on to state that commercial cement was not then available, and that in one instance he had to borrow 300 sacks of cement . from the Tahoe Truckee Lumber Company "and replace it in kind with this cement at this price." He also testified, when asked if the prices fixed in the requisitions "represent any markup or profit for Gardner Supply Company," "No, they do not, as far as I know. I am sure they don't." Obviously, the allowance for cement is amply supported.

An equally unsuccessful attack is made on the allowance for equipment rental. Rovzar testified, and supported his testimony by invoices, that he paid out $5,160.40 for equipment rentals for such machinery as concrete mixers, wheelbarrows, trucks, scoopmobile, etc., and that the charges were based on those fixed by a national organization—"I believe in this case it is the American Equipment Distributors." Appellants' main attack, so far as this item is concerned, is that there is no comparable evidence of Gardner's equipment rental costs during the period he was pouring concrete. Gardner did testify that his costs were the same as Rovzar's. For reasons already stated, it was proper to use Rovzar's costs to estimate those of Gardner.

For the same reasons, contrary to the arguments of appellants, it was proper to compute Gardner's labor costs on the basis of the evidence produced by Rovzar as to his costs. Rovzar's evidence properly proved his actual costs for labor.

No other contention of appellants requires comments.

This case is predominantly a fact case. (*Angus* v. *Roth,* 98 Cal.App.2d 672 [220 P.2d 429].) There is substantial evidence in support of the damages awarded, that is, in support of the fact of damage and in support of the amount fixed in the award. Appellants' arguments, once it is determined that it was proper to use Rovzar's figures to calculate the damages during the time Gardner poured the concrete, are basically on fact questions. These were passed on by the trial court after an extensive trial, and oral argument and written briefs had been presented. Read most favorably to respondent, the record supports all of the challenged findings. This necessitates an affirmance.

The appeal from the order denying the motion for a new trial is dismissed; the judgment appealed from is affirmed.

Bray, J., and Wood (Fred B.), J., concurred.